Lanel WILLIAMS, Plaintiff,

v.

Joseph CANNON, in his official capacity as warden of the Stateville Branch of the Illinois State Penitentiary, et al., Defendants.

No. 73 C 2819.

United States District Court, N. D. Illinois, E. D.

Feb. 25, 1974.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff.

William J. Scott, Atty. Gen., State of Illinois, Melbourne A. Noel, Jr., Asst. Atty. Gen., Chicago, Ill., for defendants.

George C. Sorenson, a senior student at Chicago-Kent School of Law, assisted on the briefs.

## MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge.

This is a three-count action brought by Plaintiff Lanel Williams, an inmate at the Stateville Branch of the Illinois State Penitentiary, to rectify alleged civil rights violations. *See* 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343. Count I asserts that the in-prison disciplinary hearing procedures employed at the Stateville Penitentiary violate the minimum due process standards mandated by recent Supreme Court and Seventh Circuit decisions. In Count II, Plaintiff maintains that he was unconstitutionally denied access to writing materials with which to communicate with his attorney and the Illinois and federal courts. Count III alleges that Defendants failed to provide Williams with underwear and that such failure was an infliction of cruel and unusual punishment. Finally, in a supplemental pleading, Plaintiff contends that he was further subjected to cruel and unusual punishment by Defendants' refusal to provide him with adequate space for physical exercise following a recent surgery. Damages are sought only in Count II; the other claims request injunctive and declaratory relief.

This matter comes before me now on Defendants' alternate motions to dismiss or for summary judgment and Plaintiff's cross-motion for partial summary judgment. Since Plaintiff is represented by counsel, the less stringent pleading standards of Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), are inapplicable here.

## I.  DUE PROCESS AND PRISON DISCIPLINARY HEARINGS

Plaintiff's claim presents serious questions concerning the minimum rights that must be accorded to inmates at in-prison disciplinary hearings. *See* United States ex rel. Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973). *See also* Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Specifically, this action seeks to clarify those aspects of the *Miller* decision that concern notice and other disciplinary procedures as well as the right to counsel at these proceedings.* The parties have submitted the following undisputed facts on cross-motions for summary judgment.

### A.  *Facts*

Plaintiff was present at the Penitentiary's B-house during the disturbances that occurred there on September 6, 1973. As a result of his alleged participation in the "B-house riot," Williams was officially reported for various infractions of prison rules and regulations. In two separate reports dated September 7, 1973, he was charged with major involvement in the riot, unauthorized absence from his cell and work assignment, possession of a dangerous weapon, issuing orders to other inmates over the cell house public address system, assisting in the preparation of a prisoner grievance petition, and threatening the lives of hostages.

On October 15, 1973, Williams was brought before the Penitentiary's Disciplinary Committee for a hearing on three unrelated reports and the two Sep-

---

* Identical issues were remanded by the *Miller* Court to Judge William J. Bauer of this District. Armstrong v. Bensinger, 71 C 2144 (N.D.Ill.). Judge Bauer was directed to consider all aspects of the decision and the disciplinary system and, after hearings dealing solely with relief, to enter an "appropriately fashioned" decree. *Miller, su-*

pra, 479 F.2d at 718. While judgment on the present questions would ordinarily be reserved pending Judge Bauer's decision, Williams' confinement in segregation as the result of the events under examination compels me to decide his allegations and to analyze the immediate ramifications of the *Miller* decision.

tember 7th charges. Before proceeding, the Committee determined that he had not received adequate advance notice of the pendency of the two riot reports. Accordingly, he was provided with copies of the allegations and was held in a transit cell for one day. The Committee conducted its hearing on October 16, 1973, only after Williams had written notice of the charges contained in the five violation reports for at least twenty-four hours. At no time was Plaintiff advised of the precise prison regulations allegedly violated or of any right to be represented by counsel at the hearing.

When he appeared before the Committee, Williams denied all the allegations. The Committee considered his denial and found against him, ordering him to fifteen days in isolation and referring him to the Institutional Assignment Committee (IAC) for indefinite administrative segregation.

Plaintiff was brought before the IAC on October 23, 1973, without advance notice of the exact time and date of the hearing. Again, Williams was not informed of the regulations alleged violated and he was not advised that he could be represented by counsel.

The IAC reviewed the evidence before it, including Williams' continued denial of wrongdoing, and found that his presence in the general prison population was a source of danger to the safety and security of the Stateville employees and inmates. As a result, Plaintiff was assigned to indefinite Administrative Segregation, where he is presently confined.

### B. *Issues*

On these facts, Plaintiff claims that his due process guarantees under United States ex rel. Miller v. Twomey, *supra,* have been violated. *See also Gagnon, supra; Morrissey, supra.* First, Williams alleges that his version of the disputed facts could only be effectively and fairly presented by a trained advocate, particularly since any exculpating statement could be used against him in a criminal prosecution. Moreover, he contends that he was given inadequate and

untimely notice of the hearings. Finally, Williams maintains that he was not informed of his right to request that witnesses be called and interviewed on his behalf.

Each issue will be examined separately.

### C. *Right to Counsel*

Succinctly stated, Williams argues that *Miller, Gagnon,* and *Morrissey* grant inmates an absolute right to representation by counsel at in-prison disciplinary hearings where the facts of the alleged wrongdoing are complicated and contested. This position lacks merit.

In *Miller,* the Seventh Circuit Court of Appeals analyzed the various interacting public and private interests present at in-prison disciplinary hearings. In a well-considered opinion, the Court recognized that the fourteenth amendment to the federal constitution mandates the observance of certain procedural safeguards at these proceedings and held that these safeguards include:

> . . . [adequate] advance written notice, a dignified hearing in which the accused may be heard, an opportunity to request that other witnesses be called or interviewed, and an impartial decision maker.

479 F.2d at 716. Contrary to Plaintiff's claims, then, the right to counsel is not among the due process minima that must be afforded accused prisoners under the *Miller* standards. In fact, the Court observed that it is "doubtful" whether due process requires legal representation in these circumstances. 479 F.2d at 715–716, n. 31.

Plaintiff argues that the Supreme Court's position in *Gagnon,* when read with its earlier decision in *Morrissey,* eliminates any doubt expressed by the *Miller* Court. Neither case, however, lends support to this conclusion. First, as will be developed, the policy considerations underlying these decisions differ substantially from those present here. *See Gagnon, supra,* 411 U.S. at 782–785, 787–788, 93 S.Ct. 1756; *Morrissey, supra,* 408 U.S. at 480–484, 92 S.Ct. 2593;

*Miller, supra,* 479 F.2d at 715, 717–718. Further, both cases treated only probation and parole revocations and made no reference to in-prison disciplinary hearings. Finally, the Court did not create an all-encompassing right to representation in either instance. Under these rulings, counsel must be provided to accused probationers and parolees *only* where fundamental fairness demands such representation.

In short, Plaintiff rests his absolute-right-to-counsel claim upon two decisions which neither concern nor discuss in-prison procedures and which hold that even probationers and parolees, confronted with the possible loss of freedom, possess only a limited and conditional right to representation. As such, *Gagnon* and *Morrissey* do not create any right to counsel at in-prison disciplinary actions.

■ Although these decisions suggest that counsel may be necessary at certain proceedings, the compelling relationship between the hearings conducted there and the present hearings is insufficient to require that identical safeguards be applied in each instance. *See Morrissey, supra,* 408 U.S. at 481, 92 S.Ct. 2593; *Miller, supra,* 479 F.2d at 715, n. 31. First, it is evident that an individual suffers a substantially greater loss when he is committed to prison after a probation or parole revocation than when he is confined to segregation after an appropriate in-prison disciplinary action. More important, with the increase in size and complexity of modern penal institutions, in-prison hearings have become common occurrences with a significant impact on the everyday maintenance of order and respect in the prison community. As such, the integrity and viability of the disciplinary system demand not only a vigilant regard for the dictates of the fourteenth amendment but also the prompt and decisive disposition of alleged rule violations. To introduce counsel into this system, even on a limited basis, would tend to convert these informal hearings into formal trials, to cause unnecessary delay, and to engender countless litigation concerning the scope and applicability of this alleged right. This particular revision of present policy would be highly detrimental to the operation of maximum security prisons, both from a disciplinary and financial viewpoint.

■ The rights of the individual inmate do not outweigh these important public concerns. To paraphrase *Morrissey, supra,* 408 U.S. at 484, 92 S.Ct. 2593, due process demands only that the proceedings are structured to assure that findings of violations are based on accurate and verified evidence. Except for Plaintiff's unexplained and unsupported conclusion concerning his peculiar need for legal assistance, nothing presented here indicates that counsel is a necessary ingredient in the realization of a constitutional hearing system. Since Williams denied, and apparently continues to deny, all involvement in wrongdoing, it is impossible to speculate, on this barren record, as to how his exculpating statements could be used against him in a criminal prosecution.

The *Miller* standards comport with enlightened notions of due process and afford fundamental fairness to accused inmates. Plaintiff offers, and this Court can perceive, no persuasive rationale for altering these requirements.

Since there are no genuine issues of material fact, Defendants are entitled to judgment as a matter of law.

D. *Notice*

Next, Williams alleges that the announcements of the Disciplinary and Institutional Assignment hearings were constitutionally deficient in that they failed to state the precise regulation allegedly violated and that they did not afford timely notification of the proceedings. *See Miller, supra; Morrissey, supra.* I disagree and hold that both notices complied with the *Miller* minima.

■ The various safeguards established by *Miller* must be analyzed as a single package of procedural rights, designed to ensure that fundamental fair-

ness will prevail at in-prison proceedings. From this vantage point, the sole purpose of "adequate and timely written notice" prior to a *Miller* hearing is to guarantee that the accused will have a "fair opportunity to explain his version" of the disputed incident. *Miller, supra,* 479 F.2d at 716, 718. Due process is realized when the hearing notice sufficiently apprises the accused inmate of the alleged infractions and of the imminence of a pending disciplinary action, thereby enabling him to present his "side of the story."

■■ Nothing in *Miller* or *Morrissey* suggests that these Defendants must inform the prisoner of the exact technical regulation that has been allegedly violated. On the contrary, these decisions indicate that notice is adequate if it merely alerts the accused that he has been charged with specified violations and that a hearing will be conducted to determine the validity of these accusations. *See Miller, supra,* 479 F.2d at 715–716, 718; *Morrissey, supra,* 408 U.S. at 487, 489, 92 S.Ct. 2593. Since both notices advised Williams of the specific factual allegations lodged against him, the letter and spirit of *Miller* have been satisfied.

Plaintiff further contends that twenty-four hours notice did not allow him sufficient time to prepare for the Disciplinary hearing and that he was prejudiced by Defendants' failure to relate the exact time and date of the IAC proceedings. In effect, Williams maintains that he is entitled to the equivalent of notice in civil actions. Under the principles discussed above, *Miller* does not require these extensive procedures. Due to the informality of these hearings and the need for expeditious handling of prisoner infractions, notice under *Miller* cannot be compared to the more liberal notice provisions of the Federal Rules of Civil Procedure.

■ Every charge against Williams was disclosed to him in writing at least one day before any action was taken. Moreover, Plaintiff had oral and written notice during the week preceding the IAC meeting. At no time did he complain to either committee that he needed additional time for preparation. In each instance, Williams was notified sufficiently in advance of the hearing to enable him to explain his participation, or non-participation, in the disputed incidents. This fulfills the due process requirements of *Miller*.

Since there are no genuine issues of material fact, Defendants are entitled to judgment as a matter of law on this issue.

### E. *Opportunity to Request Witnesses*

Plaintiff's final claim under *Miller* relates to his right to a "fair opportunity . . . to request that witnesses be called or interviewed." *Miller, supra,* 479 F.2d at 718. Williams asserts that he was not informed of this right and was thereby deprived of a constitutional disciplinary hearing.

■ So stated, Plaintiff misapprehends the dictates of *Miller*. Unlike the *Miranda* warnings, *see* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the *Miller* minima do not require that in-prison disciplinary boards affirmatively inform each and every inmate of his constitutional entitlements. While such notification may be the wisest course for prison officials to follow, it is not mandated by the Seventh Circuit's opinion or the fourteenth amendment.

■ *Miller* merely provides that an accused prisoner must be accorded a "fair opportunity" to request witnesses. Contrary to Defendants' assertions, however, a "fair opportunity" necessarily contemplates that the accused is familiar with his rights and is given a chance to exercise them. Any other interpretation would render *Miller* meaningless.

■ In the context of this case, due process is abridged only when the accused inmate is unaware of his constitutional prerogatives *and* is not advised of them by the hearing board. No violation occurs if the board fails to notify a prisoner who is already aware of his

rights. In short, an actionable claim for deprivation of this entitlement must allege that the prisoner-plaintiff neither *knew* nor *was informed* of his rights.

In his pleadings and supporting documents, Williams makes no allegations and presents no evidence concerning his knowledge of his Miller rights. Accordingly, this complaint fails to state a claim upon which relief can be granted and must be dismissed. However, recognizing that failure to so allege may be due to the inadvertence of Plaintiff's counsel, leave to amend within ten days is granted.

## II. ALLEGED DENIAL OF WRITING MATERIALS

In Count II, Plaintiff Williams alleges that State Penal Officers Simmons and Lauderdale violated his right to access to the courts and his counsel by refusing him writing materials. *See* U.S.Const. Amend. I; Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). In sworn uncontested affidavits, these officers state that any denial of writing materials was the result of a good-faith mistake on their part. Since this affirmative defense may properly be raised by motion, 2A Moore's Federal Practice ¶ 8.28, and since there are no genuine issues of material fact as to these allegations, Defendants' motion for summary judgment is appropriate. The undisputed good-faith defense of Defendants Simmons and Lauderdale entitles them to judgment as a matter of law. *See Miller, supra,* 479 F.2d at 719, n. 39. *See also* the affidavits of Officers Simmons, Lauderdale and McGowan.

## III. ALLEGED DENIAL OF UNDERWEAR

Williams further contends that he has been cruelly and unusually punished by Defendants' refusal to provide him with an adequate supply of underwear. In undisputed affidavits, Defendants outline the procedure by which underwear may be requested and attest that Williams has now received his full provision of clothing. Since this Count seeks only injunctive relief and since there is no indication or suggestion that the alleged deprivation will be repeated, this issue is moot. *See* 6A Moore's Federal Practice ¶ 57.13.

## IV. ALLEGED DENIAL OF PROPER MEDICAL TREATMENT

In a supplemental pleading, Williams claims that his present confinement in segregation denies him sufficient room in which to exercise in order to properly recuperate from a recent surgical operation. Plaintiff maintains that this denial constitutes cruel and unusual punishment. However, the uncontested opinion of Plaintiff's physician is that an adequate amount of physical exercise may be obtained by pacing back and forth in his segregation cell. On the authority of Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974), these allegations fail to state a claim upon which relief can be granted.

## V. JUDGMENT ORDER

Defendants' Motion for Summary Judgment is granted as to the counsel and notice issues of Count I. The witness allegations in Count I fail to state a claim upon which relief can be granted and are dismissed, with ten days leave to amend. Defendants' Motion for Summary Judgment is granted as to Count II. Count III is moot and is dismissed. The supplemental pleading is dismissed for failure to state a claim. All other motions are denied. Case dismissed.