## GAGNON, WARDEN v. SCARPELLI

No. 71–1225.   Argued January 9, 1973—Decided May 14, 1973

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined.   DOUGLAS, J., filed a statement dissenting in part, *post*, p. 791.

*William A. Platz,* Assistant Attorney General of Wisconsin, argued the cause for petitioner. With him on the briefs was *Robert W. Warren,* Attorney General.

*William M. Coffey,* by appointment of the Court, 408 U. S. 921, argued the cause and filed a brief for respondent.

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents the related questions whether a previously sentenced probationer is entitled to a hearing when his probation is revoked and, if so, whether he is entitled to be represented by appointed counsel at such a hearing.

I

Respondent, Gerald Scarpelli, pleaded guilty in July 1965, to a charge of armed robbery in Wisconsin. The trial judge sentenced him to 15 years' imprisonment, but suspended the sentence and placed him on probation for seven years in the custody of the Wisconsin Department of Public Welfare (the Department).[1] At that time, he signed an agreement specifying the terms of his probation and a "Travel Permit and Agreement to Return" allowing him to reside in Illinois, with supervision there under an interstate compact. On August 5, 1965, he was accepted for supervision by the Adult Probation Department of Cook County, Illinois.

On August 6, respondent was apprehended by Illinois police, who had surprised him and one Fred Kleckner,

---

[1] The Court's order placing respondent on probation provided, among other things, that "[i]n the event of his failure to meet the conditions of his probation he will stand committed under the sentence all ready [*sic*] imposed." App. 10. The agreement specifying the conditions of the probation, duly executed by respondent, obligated him to "make a sincere attempt to avoid all acts which are forbidden by law . . . ." App. 12.

Jr., in the course of the burglary of a house. After being apprised of his constitutional rights, respondent admitted that he and Kleckner had broken into the house for the purpose of stealing merchandise or money, although he now asserts that his statement was made under duress and is false. Probation was revoked by the Wisconsin Department on September 1, without a hearing. The stated grounds for revocation were that:

> "1. [Scarpelli] has associated with known criminals, in-direct violation of his probation regulations and his supervising agent's instructions;
> "2. [Scarpelli,] while associating with a known criminal, namely Fred Kleckner, Jr., was involved in, and arrested for, a burglary . . . in Deerfield, Illinois." App. 20.

On September 4, 1965, he was incarcerated in the Wisconsin State Reformatory at Green Bay to begin serving the 15 years to which he had been sentenced by the trial judge. At no time was he afforded a hearing.

Some three years later, on December 16, 1968, respondent applied for a writ of habeas corpus. After the petition had been filed, but before it had been acted upon, the Department placed respondent on parole.[2] The District Court found that his status as parolee was sufficient custody to confer jurisdiction on the court and that the petition was not moot because the revocation carried "collateral consequences," presumably including the restraints imposed by his parole. On the merits, the District Court held that revocation without a hearing and counsel was a denial of due process. 317 F. Supp. 72 (ED Wis. 1970). The Court of Appeals affirmed *sub*

---

[2] Respondent was initially paroled to a federal detainer to serve a previously imposed federal sentence arising from another conviction. He was subsequently released from federal custody, but remains a parolee under the supervision of the Department.

*nom. Gunsolus* v. *Gagnon,* 454 F. 2d 416 (CA7 1971), and we granted certiorari. 408 U. S. 921 (1972).

## II

Two prior decisions set the bounds of our present inquiry. In *Mempa* v. *Rhay,* 389 U. S. 128 (1967), the Court held that a probationer is entitled to be represented by appointed counsel at a combined revocation and sentencing hearing. Reasoning that counsel is required "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected," *id.,* at 134, and that sentencing is one such stage, the Court concluded that counsel must be provided an indigent at sentencing even when it is accomplished as part of a subsequent probation revocation proceeding. But this line of reasoning does not require a hearing or counsel at the time of probation revocation in a case such as the present one, where the probationer was sentenced at the time of trial.

Of greater relevance is our decision last Term in *Morrissey* v. *Brewer,* 408 U. S. 471 (1972). There we held that the revocation of parole is not a part of a criminal prosecution.

> "Parole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.,* at 480.

Even though the revocation of parole is not a part of the criminal prosecution, we held that the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process. Specifically, we held that a parolee is entitled to two hearings, one a

preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision.

Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one.[3] Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty.[4] Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer, supra.*[5]

---

[3] Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole. See, *e. g.,* Van Dyke, Parole Revocation Hearings in California: The Right to Counsel, 59 Calif. L. Rev. 1215, 1241–1243 (1971); Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J. Crim. L. C. & P. S. 175, 198 n. 182 (1964).

[4] It is clear at least after *Morrissey* v. *Brewer,* 408 U. S. 471 (1972), that a probationer can no longer be denied due process, in reliance on the dictum in *Escoe* v. *Zerbst,* 295 U. S. 490, 492 (1935), that probation is an "act of grace."

[5] Petitioner argues, in addition, that the *Morrissey* hearing requirements impose serious practical problems in cases such as the present one in which a probationer or parolee is allowed to leave the convicting State for supervision in another State. Such arrangements are made pursuant to an interstate compact adopted by all of the States, including Wisconsin. Wis. Stat. Ann. § 57.13 (1957). Petitioner's brief asserts that as of June 30, 1972, Wisconsin had a total of 642 parolees and probationers under supervision in other States and that incomplete statistics as of June 30, 1971, indicated a national total of 24,693 persons under out-of-state supervision. Brief for Petitioner 21–22.

Some amount of disruption inevitably attends any new constitutional ruling. We are confident, however, that modification of the

## III

The second, and more difficult, question posed by this case is whether an indigent probationer or parolee has a due process right to be represented by appointed counsel at these hearings.[6] In answering that question, we draw heavily on the opinion in *Morrissey*. Our first point of reference is the character of probation or parole. As noted in *Morrissey* regarding parole, the "purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able . . . ." 408 U. S., at 477. The duty and attitude of the probation or parole officer reflect this purpose:

"While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional at-

interstate compact can remove without undue strain the more serious technical hurdles to compliance with *Morrissey*. An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

[6] In *Morrissey* v. *Brewer*, we left open the question "whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." 408 U. S., at 489. Since respondent did not attempt to retain counsel but asked only for appointed counsel, we have no occasion to decide in this case whether a probationer or parolee has a right to be represented at a revocation hearing by retained counsel in situations other than those where the State would be obliged to furnish counsel for an indigent.

titude.   The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety." [7]

Because the probation or parole officer's function is not so much to compel conformance to a strict code of behavior as to supervise a course of rehabilitation, he has been entrusted traditionally with broad discretion to judge the progress of rehabilitation in individual cases, and has been armed with the power to recommend or even to declare revocation.

In *Morrissey,* we recognized that the revocation decision has two analytically distinct components:

> "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole.   Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?"   408 U. S., at 479–480. [8]

---

[7] F. Remington, D. Newman, E. Kimball, M. Melli & H. Goldstein, Criminal Justice Administration, Materials and Cases 910–911 (1969).

[8] The factors entering into these decisions relate in major part to a professional evaluation, by trained probation or parole officers, as to the overall social readjustment of the offender in the community, and include consideration of such variables as the offender's relationship toward his family, his attitude toward the fulfillment of financial obligations, the extent of his cooperation with the probation or parole officer assigned to his case, his personal associations, and—of course—whether there have been specific and significant violations of the conditions of the probation or parole.   The importance of these considerations, some factual and others entirely judgmental, is illustrated by a Wisconsin empirical study which disclosed that, in the sample studied, probation or parole was revoked in only 34.5% of the cases in which the probationer or parolee violated the terms of his release.   S. Hunt, The Revocation Decision: A Study of Probation

The parole officer's attitude toward these decisions reflects the rehabilitative rather than punitive focus of the probation/parole system:

> "Revocation . . . is, if anything, commonly treated as a failure of supervision. While presumably it would be inappropriate for a field agent *never* to revoke, the whole thrust of the probation-parole movement is to keep men in the community, working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail." [9]

But an exclusive focus on the benevolent attitudes of those who administer the probation/parole system when it is working successfully obscures the modification in attitude which is likely to take place once the officer has decided to recommend revocation. Even though the officer is not by this recommendation converted into a prosecutor committed to convict, his role as counsellor to the probationer or parolee is then surely compromised.

When the officer's view of the probationer's or parolee's conduct differs in this fundamental way from the latter's own view, due process requires that the difference be resolved before revocation becomes final. Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.

---

and Parole Agents' Discretion 10 (unpublished thesis on file at the library of the University of Wisconsin) (1964), cited in Brief for Petitioner, Addendum 106.

[9] Remington, Newman, Kimball, Melli & Goldstein, *supra,* n. 7, at 910.

It was to serve all of these interests that *Morrissey* mandated preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. 408 U. S., at 487. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey* v. *Brewer, supra,* at 489.

These requirements in themselves serve as substantial protection against ill-considered revocation, and petitioner argues that counsel need never be supplied. What this argument overlooks is that the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical

rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence.

By the same token, we think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him.[10]  And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.

The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views.  The role of the hearing body itself, aptly described in *Morrissey* as being "predictive and discretionary" as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the

---

[10] See Sklar, *supra,* n. 3, at 192 (parole), 193 (probation).

rehabilitative needs of the individual probationer or parolee. In the greater self-consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation. Certainly, the decisionmaking process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.[11]

In some cases, these modifications in the nature of the revocation hearing must be endured and the costs borne because, as we have indicated above, the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate. But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.

In so concluding, we are of course aware that the case-by-case approach to the right to counsel in felony prosecutions adopted in *Betts* v. *Brady,* 316 U. S. 455 (1942), was later rejected in favor of a *per se* rule in *Gideon* v. *Wainwright,* 372 U. S. 335 (1963). See also *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972). We do not, however, draw from *Gideon* and *Argersinger* the conclusion that a case-by-case approach to furnishing counsel is necessarily inadequate to protect constitutional rights asserted in varying types of proceedings: there are critical differences between criminal trials and probation or parole revoca-

---

[11] The scope of the practical problem which would be occasioned by a requirement of counsel in all revocation cases is suggested by the fact that in the mid-1960's there was an estimated average of 20,000 adult felony parole revocations and 108,000 adult probation revocations each year. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 56 n. 28 (1967).

tion hearings, and both society and the probationer or parolee have stakes in preserving these differences.

In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole. The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases.

The differences between a criminal trial and a revocation hearing do not dispose altogether of the argument that under a case-by-case approach there may be cases in which a lawyer would be useful but in which none would be appointed because an arguable defense would be uncovered only by a lawyer. Without denying that there is some force in this argument, we think it a sufficient answer that we deal here, not with the right of an accused to counsel in a criminal prosecution, but with the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime.[12]

---

[12] Cf. *In re Gault,* 387 U. S. 1 (1967), establishing a juvenile's right to appointed counsel in a delinquency proceeding which, while denominated civil, was functionally akin to a criminal trial. A juvenile charged with violation of a generally applicable statute is differently situated from an already-convicted probationer or parolee, and is entitled to a higher degree of protection. See *In re Winship,*

We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider,

---

397 U. S. 358 (1970) (the standard of proof in a juvenile delinquency proceeding must be "proof beyond a reasonable doubt").

especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

## IV

We return to the facts of the present case. Because respondent was not afforded either a preliminary hearing or a final hearing, the revocation of his probation did not meet the standards of due process prescribed in *Morrissey,* which we have here held applicable to probation revocations. Accordingly, respondent was entitled to a writ of habeas corpus. On remand, the District Court should allow the State an opportunity to conduct such a hearing. As to whether the State must provide counsel, respondent's admission to having committed another serious crime creates the very sort of situation in which counsel need not ordinarily be provided. But because of respondent's subsequent assertions regarding that admission, see *supra,* at 780, we conclude that the failure of the Department to provide respondent with the assistance of counsel should be re-examined in light of this opinion. The general guidelines outlined above should be applied in the first instance by those charged with conducting the revocation hearing.

*Affirmed in part, reversed in part, and remanded.*

MR. JUSTICE DOUGLAS, dissenting in part.

I believe that due process requires the appointment of counsel in this case because of the claim that respondent's confession of the burglary was made under duress. See *Morrissey* v. *Brewer,* 408 U. S. 471, 498 (opinion of DOUGLAS, J.).