TATE, Justice.
The defendant’s probation was revoked. We granted certiorari, 371 So.2d 270 (1979), on the defendant’s contention that her probation was revoked without affording her an opportunity to explain mitigating circumstances relating to her probation violations.
I.
Clara R. Rideau, an indigent, pleaded guilty to nineteen counts of issuing worthless checks, La.R.S. 14:71, in the total amount of $914.20. She was sentenced to one year in the parish jail on one count (a check in the amount of $114.75), and to 30 *1252 days each on the remaining counts (checks under one hundred dollars), all sentences to run concurrently. The sentences were suspended, and the defendant placed on two years’ supervised probation, with restitution as a special condition.
The defendant had pleaded guilty on February 9, 1978. On March 1, 1979, a year later, the defendant’s probation officer alleged violations of four[1] of the ten statutory conditions of probation, including that she had failed to pay $713.70 of the restitution payments, which she had agreed to pay in full by February 1, 1979. The probation officer recommended that the defendant’s probation be revoked.
The defendant was called before the court to answer to the charge of probation violations on March 12, 1979. When asked by the judge if she had violated the conditions of her probation, she replied, “in a way I violated it and in a way I didn’t.” Asked if she needed witnesses to testify she said she thought she could explain her position to the judge. She then accepted the trial judge’s offer to fix a hearing at a later date and a hearing was then fixed for March 28, 1979.
At the March 28, 1979, hearing another judge presided. The defendant was not represented by counsel. The judge read each of the charges and asked defendant if the facts were correctly stated. To each question she replied in the affirmative.
After these affirmative responses, the trial court asked the defendant if there was any reason why her probation should not be revoked. When she attempted to explain, the judge variously replied, “I’m not interested in that,” “I don’t care about any explanations,” “You were told to explain these things to your probation officer, not to me.” [2]
II.
Inadvertently or otherwise, the judge expressed an attitude that any probation violation requires revocation if the probation officer so recommends it. This approach, however, discards both the duties and discretion vested in the revoking court by the legislature.
In Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court emphasized that parole and probation revocation hearings are comprised of two analytically distinct components. The first is a determination of whether there was indeed a violation of the *1253 probation conditions. If it is determined that there was such a violation, the court must then consider whether reconfinement or some less drastic alternative is the best solution to both protect society and improve the defendant’s chances of rehabilitation. This second step is “not purely factual, but predictive and discretionary.” Morrissey, 408 U.S. at 480, 92 S.Ct. at 2599-2600.
In Louisiana, once a violation has been established, the range of the court’s discretion is delimited by La.C.Cr.P. art. 900. By this, the court is allowed to reprimand and warn the defendant, order that supervision be intensified, add additional conditions to the probation, or, in the most drastic case, order that the probation be revoked. While the trial court is entrusted with much discretion, an abuse thereof is reviewable by this court. State v. Lassai, 366 So.2d 1389 (La.1978); State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976).
Both to prevent such an abuse of discretion and to guarantee a defendant minimal due process, the Supreme Court formulated certain basic guidelines for parole and probation revocation hearings. They include: “(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a ‘neutral and detached’ hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.” Morrissey, at 408 U.S. at 489, 92 S.Ct. at 2604.
Accord, Baggert v. State, 350 So.2d 652 (La.1977); State v. Harris, 368 So.2d 1066 (La.1979).
By allowing the probation officer to make the determination of which sanction should be authorized for the violations, the judge effectively denied the defendant a hearing before a “neutral and detached” body.
As was recognized in Gagnon v. Scarpelli, 411 U.S. at 785, 93 S.Ct. at 1761, “an exclusive focus on the benevolent attitudes of those who administer the probation/parole system when it is working successfully obscures the modification in attitude which is likely to take place once the officer has decided to recommend revocation. Even though the officer is not by this recommendation converted into a prosecutor committed to convict, his role as a counsellor to the probationer or parolee is then surely compromised.”
III.
The trial court therefore was in error in refusing to listen to the defendant’s explanations for her violations and in abdicating its responsibility (not the probation officer’s) to determine whether the drastic remedy of revocation was appropriate under the circumstances.[3]
The revocation of probation should therefore be set aside, and the case remanded for further hearing.
Additionally, although the defendant did not request appointment of counsel prior to the request in her application to this court, counsel should be appointed to represent her. Even though the violations are not contested, “there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and . . . the reasons are complex or otherwise difficult to develop or present” by an uneducated defendant. Gagnon, 411 U.S. at 790, 93 S.Ct. at 1764. See also Baggert v. State, 350 So.2d 652 (La.1977).

*1254
Decree

Accordingly, the revocation of probation is set aside, and this case is remanded to the district court for further proceedings consistent with the views expressed by us.
PROBATION REVOCATION SET ASIDE; CASE REMANDED.
SUMMERS, C. J., dissents and assigns reasons.
MARCUS, J., dissents.

. The violations alleged are:
(a) She had failed to report to the probation officer on three occasions during 1978, and had failed to report back after receiving a travel permit for medical attention in Houston expiring 9/25/78 until 11/16/78; (b) that she was delinquent in her monthly reports during 1978, and that her report of January 25, 1979, which attempted to complete delinquent reports was incomplete — that “she has been so inconsistent in reporting that subject does not even know what months she is reporting for;” (c) that she failed to make restitution according to the schedule and within the year agreed upon. The fourth (d) violation complained of is ultra-technical: “In effect subject denied this officer permission to visit at her home due to the fact that she failed to report her return to Lake Charles after being issued a travel permit on 9/18/78” — it is actually a duplication of the (a) violation.

. The full colloquy is as follows:
“THE COURT: Any reason why your probation should not be revoked?
“MRS. RIDEAU:' Well, Your Honor, I had saved by money to make my restitution, but my son got in some trouble in Houston, and 1 can explain some of my reasons for being late reporting.
“THE COURT: Well, I’m not interested in that. You did not do the things that you promised to do when you were on probation. Your probation is revoked and the original sentences are carried out. Remand you to the Sheriff. All right; thank you. Who is next?
“MRS. RIDEAU: Your Honor could I explain something, please?
“THE COURT: I asked you if these were correct and you told me yes. Now, what . I don’t care about any explanations.
“MRS. RIDEAU: I’m not . . .
“THE COURT: You were told to explain these things to your probation officer, not to me. Now, you can’t tell me that you didn’t get to Court . .1 mean to the probation officer for seven months. You were either late or you didn’t report at all. Now, you don’t have to explain that to me. You have to explain that to her.”

. The defendant was an indigent widow with four children, aged 6 to 14. One reason for her delinquencies was that her little boy had been hit by a car, as she stated, Tr. 37, in attempting to explain why she had not paid the full nine hundred dollars within a year. There may have been more than the marginally deviant behavior to be tolerated from a probationer, but see footnote 1; however, there is no way that the revoking court could make that determination without listening to the mitigating explanation attempted by the probationer.