387 So.2d 75 (1980)
STATE of Louisiana in the Interest of Troy Dexter WRIGHT (three cases).
Nos. 11462-11464.
Court of Appeal of Louisiana, Fourth Circuit.
July 30, 1980.
Writ Granted in part and Denied in part September 19, 1980.
*76 Steven Scheckman, New Orleans Legal Assistance Corp., New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Mary L. Beck, Asst. Dist. Atty., New Orleans, for appellee.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
CHEHARDY, Judge.
Troy Dexter Wright appeals a decision of the Orleans Parish Juvenile Court granting a motion of the assistant district attorney to modify a judgment of disposition which resulted in a sentence to petitioner of three years at the Department of Corrections and one year at the Department of Corrections to run concurrently.
On January 27, 1979, Wright was arrested for violation of LSA-R.S. 14:67 relative to the theft of three hams from a food store, and subsequently pleaded guilty to an amended charge of attempted theft.
Upon recommendation of the probation department, he was placed on probation for one year, specially conditioned on a 9 p. m. curfew, regular church attendance and attendance at school every day it was in session.
On June 8, 1979, petitioner was arrested and later pleaded guilty to a charge of receiving stolen things, pursuant to LSA-R.S. 14:69. The court ruled on July 25, *77 1979, that Wright, having been found delinquent in that matter, was committed to the Department of Corrections for three years. Sentence was suspended, however, and Wright was placed on probation for a period of three years, to run concurrently with sentencing in the above case.
Conditions of probation were:
"* * * [T]hat the said juvenile stay away from any places where he has committed a crime unless accompanied by his mother; that he receive mental health treatment; that he attend school daily and submit a copy of his report card to the Court; that the mother of the juvenile submit to therapy and that a report to the Court on her progress be submitted to the Court; that the juvenile attend Church every Sunday and that he stay away from bad company. Troy Wright is further placed in the custody of the Louisiana Department of Health and Human Resources for placement at Volunteers of America. * * *"
On June 18, 1979, petitioner was arrested for violation of LSA-R.S. 14:37 relative to aggravated assault. He subsequently pleaded guilty to the charge and was sentenced to the Department of Corrections for three years, sentence suspended, and placed on probation for three years, sentence to run concurrently with that in the above case. Conditions of probation were identical to those listed supra.
The Orleans Parish District Attorney's Office, in its Motion to Modify Judgment of Disposition, filed on November 16, 1979, charged that:
"(3) * * * Troy Wright was placed in a group Home, The Volunteers of America, an [sic] on October 31, 1979, Troy Wright was arrested for Theft. Mr. David Horn, the group parent advised this office that Troy Wright has not been attending School on a regular basis, and that this is his second encounter with the authorities.
"(4) It is therefore necessary that the Court hold a hearing to determine the necessity for modification of disposition pursuant to Articles 91 through 94 of the 1979 Louisiana Code of Juvenile Procedure."
On November 16, 1979, a hearing was held on the Motion to Modify Judgment of Disposition.
LSA-C.J.P. art. 91 states in part:
"A. On its own motion or on motion of the district attorney, the child, his parents or the probation officer, the court may modify a judgment of disposition.
"B. A motion to modify a judgment of disposition may be denied without a contradictory hearing. A motion to modify to impose more restrictive conditions may not be granted without a contradictory hearing unless the parties consent."
LSA-C.J.P. art. 93 provides:
"A judgment of disposition may be modified if the court finds that the condition and circumstances justify the modification.
"In delinquency proceedings, if a judgment of disposition places a child on probation, the judgment may not be modified to assign the child to the custody of the Department of Corrections unless the court finds that a condition of probation has not been observed."
The only parties who testified at the hearing were Andrew Schiro, probation officer, and David Horn, the Volunteers of America group home parent.
Petitioner now argues that in allowing testimony regarding his behavior in the group home and his association with bad company the State went beyond the scope of their motion to modify, thereby denying him the minimum requirements of due process of law. In support of this argument he cites Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); State v. Davis, 375 So.2d 69 (La.1979); State v. Harris, 368 So.2d 1066 (La.1979); and State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976).
Petitioner further avers that neither his arrests subsequent to probation nor hearsay statements of criminal activity by his probation officer were sufficient to revoke probation, citing State v. Sussmann, 374 So.2d *78 1256 (La.1979); State v. O'Conner, 312 So.2d 645 (La.1975); and State v. Harris, supra.
An additional assignment of error claimed by Wright is that the State only proved that he had missed two periods of class, and that this is an insufficient basis for revoking parole, noting State v. Sussmann, supra, and State in Interest of Bellanger, 357 So.2d 634 (La.App. 1st Cir. 1978).
Wright further argues that the trial court erred in qualifying David Horn as an expert in behavior modification because he did not have the requisite special training or experience within the meaning of LSA-R.S. 15:464 nor the requisite knowledge within the meaning of LSA-R.S. 15:466 to qualify as an expert.
The assistant district attorney admitted at the revocation that there had been no convictions of Wright since the disposition placing him on probation was handed down; and the only evidence of arrests presented was in the form of oral testimony on the parts of Schiro and Horn.
We must agree that the arrests of Wright, subsequent to his being placed on probation, would not, alone, revoke his suspended sentence without proof that an actual crime had been committed. As the court explained in State v. Sussmann, supra:
"1. At the hearing Sussmann admitted that he had been arrested and charged with attempted simple burglary in Jefferson Parish, but the charges were dropped. This evidence was not sufficient to establish that Sussmann violated the condition of probation that he not engage in criminal conduct because Sussmann was only arrested for, but not convicted of, this criminal charge. State v. Harris, 368 So.2d 1066 (La.1979). At a revocation hearing, a violation of the conditions of probation may be shown by establishing a criminal conviction or by actual proof of the commission of a crime, apart from conviction. State v. Davis, 375 So.2d 69 (La.1979), citing State v. O'Conner, 312 So.2d 645 (La.1975) and State v. Harris, 312 So.2d 643 (La.1975). As this court explained in State v. Harris, 368 So.2d 1066 (La.1979), the holding of these decisions is that in those instances in which the State does not prove that defendant was convicted of a crime which would form the basis of a revocation, it must present actual proof that the defendant has engaged in such criminal conduct. Proof of an arrest alone indicates only that a crime may be charged, not that a crime has been committed." 374 So.2d at 1257.
Since at the time of the revocation hearing the petition had not yet been tried for the October 31, 1979 theft charge, and the prosecution did not try to show any details concerning the actual commission of that crime, we must hold that evidence of this arrest alone was an insufficient basis for revocation of probation.
The Louisiana Supreme Court has also reversed decisions where probation was revoked for a relatively minor offense. In State ex rel Robertson v. Maggio, supra, a probationer's delay in reporting a change of address to the probation officer was held not sufficient violation to warrant revocation. In referring to the Louisiana Code of Criminal Procedure Article 900 (which gives the authority to revoke probation, as does LSA-C.J.P. art. 93), the court said:
"* * * This article gives the judge wide latitude in responding to probation violations, and calls for the sound exercise of judicial discretion.
"It is not without reason that the legislature provided for the exercise of judicial discretion in dealing with probation violationsthey can be minor and ephemeral, as here, or serious. A single, inflexible policy for dealing with all violations would not serve the legislatively desired goal of rehabilitation. Cf. Wilson, The Louisiana Criminal Code: Making the Punishment Fit the Criminal, 5 La.L.Rev. 53, 56 (1942). * * *" 341 So.2d at 369-370.
In the present case petitioner argues that, although his probation was conditioned *79 on, among other things, attendance of school every day it was in session, and there was proof offered at trial that Horn actually observed Wright's absence during only two class periods, we can find no error in the juvenile court's acceptance of Horn's testimony that he had knowledge the petitioner had in fact missed a total of four days of school. It must be noted that Horn was the proper party to be notified by school authorities of petitioner's absences. Therefore, revocation of probation on that ground alone would have been within the discretion of the juvenile judge.
In regard to the petitioner's claim that testimony regarding his behavior in the group home and regarding his association with bad company should not have been allowed (because there was no mention of these probation violations in the assistant district attorney's Motion to Modify Judgment of Disposition), we refer to the case of State v. Davis, supra, where the court said:
"At the revocation hearing, a violation of the conditions of probation may be shown by establishing a criminal conviction or by actual proof of the commission of a crime, apart from conviction. State v. O'Conner, 312 So.2d 645 (La.1975); see also State v. Harris, 312 So.2d 643 (La. 1975). In the first instance, the hearing judge looks to the record of a criminal prosecution, but in the latter he looks to the actual conduct of the defendant that violates the conditions of his probation. State v. O'Conner, supra.
"In Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court adapted the minimum requirements of due process that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), held applicable to parole revocation hearings, and applied them to probation revocation hearings. As established by the Court, these minimum requirements of due process are:
`(a) Written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' 411 U.S. 786, 93 S.Ct. at 1761.

"Morrissey and Gagnon both recognized that the revocation decision has two analytically distinct components: the wholly retrospective factual question of whether the probationer has in fact acted in violation of one or more conditions of his parole, and if so, should the probationer be committed to prison or should other steps be taken to protect society and improve chances of rehabilitation. The court in Gagnon further noted the critical differences between criminal trials and probation revocation hearings, among them that formal procedures and rules of evidence are not employed. The court specifically held that: `Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty.' 411 U.S. 782, 93 S.Ct. at 1159." 375 So.2d at 71-72.
The reference in the motion to modify to subsequent arrests should have been adequate notice to Wright that his behavior in the Volunteers of America group home would be testified to by Horn. Moreover, since one of the arrests alleged in the assistant district attorney's motion involved a person whom Wright had been specifically advised he should consider bad company, we hold that there was adequate notice given to satisfy Louisiana and United States constitutional due process mandates that evidence of his association with "bad company" would be presented at the hearing. Furthermore, we find the State's proof that Wright was no longer able to stay in the group home and that he was still associating with "bad company" was adequate to establish he was in violation of two specific conditions of his probation.
*80 We can find no merit in Wright's argument that he did not have to respect the Volunteers of America home as a condition of probation. Part of the court's order in its original disposition was that Wright "is further placed in the custody of the Louisiana Department of Health and Human Resources for placement at Volunteers of America." The fact that he could no longer, according to Horn's testimony, remain in that agency's custody is certainly adequate grounds for revocation of his probation.
Neither can we find merit in Wright's contentions that the trial court erred in admitting the testimony of Horn as an expert in "behavioral modification." The issue was addressed in State v. Stahl, 107 So.2d 670, 674-675 (La.1958), when the court determined:
"As shown by the trial judge's per curiam, the witness was qualified to the judge's satisfaction. The rule is well settled that whether a witness is entitled to be heard in the capacity of expert is within the trial judge's province to decide, and his ruling will not be disturbed where no error appears. Moreover, under Article 464 of the Code of Criminal Procedure the opinions of a qualified expert are admissible on matters in the field in which he has qualified. * * *"
Horn was held by the juvenile judge to have adequate learning and experience to testify as an expert, and we can find no error in that ruling.
Further reason for allowing testimony of Horn can be found in LSA-C.J.P. art. 90, which states in part:
"B. Any institution or agency to which a child is assigned, upon request, shall provide the court any information concerning the condition, supervision, treatment, or rehabilitation program of the child."
Petitioner's final contention: that his sentence in this case should not have exceeded six months, and that, therefore, since he was sentenced on November 21, 1979, his commitment to the Department of Corrections expired on May 21, 1980, we find equally without merit. Wright's violation of LSA-R.S. 14:67, 14:69 and 14:37 cumulatively amount to a proper sentence of three years under LSA-C.J.P. art. 89, which states in part:
"B. If the child is adjudicated a delinquent and assigned to the custody of the Department of Corrections, the judgment shall not remain in force for a period exceeding the maximum term of imprisonment for the offense forming the basis for the adjudication."
This court also considered the assistant district attorney's motion to dismiss this appeal on grounds that petitioner had not applied for supervisory writs and, therefore, this court lacked jurisdiction for review.
Although LSA-C.J.P. art. 97 gives the right to appeal from a judgment of disposition, it is our opinion that by implication, this article also gives the right to appellate review of a modification of judgment of disposition, as demanded by LSA-Const. Art. 5, § 10, which grants courts of appeal jurisdiction in all matters appealed from family and juvenile courts. Moreover, although LSA-Const. Art. 5, § 10 also grants supervisory jurisdiction to appellate courts, it does so only over cases in which an appeal would also lie.
Accordingly, the juvenile court's judgment of disposition, sentencing Troy Dexter Wright to three years at the Department of Corrections and one year at the Department of Corrections, to run concurrently, is affirmed in all respects.
AFFIRMED.