OPINION OF THE COURT
Bernard J. Fried, J.
At issue is whether an Assistant General Counsel (probation attorney) of the New York City Department of Probation (Department) may prosecute a violation of probation and act as an advocate at the hearing on the violation. I conclude that, where the District Attorney has declined to appear and prosecute a probation violation, the probation attorney may fully prosecute the violation on behalf of the Department.
Here, the violation proceedings were initiated by the probation attorney with the request that a declaration of delinquency be filed by the court pursuant to CPL 410.70 (2). Thereafter, the District Attorney declined to appear even though the original criminal action had been prosecuted by him.[1] The authority of the probation attorney to prosecute the violation was questioned and these proceedings ensued.[2]
*1068 It is defendant’s position that, in the absence of the District Attorney, the probation attorney is not authorized to prosecute the violation, but her role is limited to providing the hearing court with evidence on which to base a decision. To permit the probation attorney to so act, absent statutory authorization, so the argument runs, would improperly permit the Department to take an adversarial role at a violation hearing. The Department’s argument is that, in the absence of the District Attorney, the probation attorney should be permitted to prosecute the violation. As support for this position, the Department points out that a violation hearing is adversarial in nature, and that as an executive agency, the Department has a legitimate interest in prosecuting the violation.
Crucial to the resolution of this issue is a determination of the defendant’s implicit contention that the Department is and necessarily must be an arm of the judicial branch. In my view, examination of today’s statutory probation scheme, together with a review of its historical antecedents and the relevant case law compels rejection of this contention. Rather, the Department is an executive branch agency and is not either statutory or constitutionally an arm or creature of the court.
In 1973 the Legislature created “a department of probation in and for the city of New York” (Executive Law § 255 [1]; L 1973, ch 603). By this enactment, as the legislative history shows, “The department thus created would be placed squarely in the Executive branch of government” (letter from the Acting State Director of Probation, dated June 5, 1973 [see, materials in Bill Jacket, L 1973, ch 603). It was further stated that “The removal of probation services in New York City from under the aegis of the Judicial Conference and placing it under the Mayor of the City of New York brings probation in New York City under the same administrative structure that was created for probation in 1971 in the remainder of the state, when the probation services were placed under the direction of the Chief Executive Officer of the counties. This step should clarify the lines of authority within the probation system and go a long way toward eliminating the confusion which has resulted from the divided authority over probation which existed between the Executive and Judicial branches of government” (ibid.). Approval of the legislation was also urged by the Judicial Conference (letter from the Acting State Administrator of the Courts, dated June 7, 1973 [Bill Jacket, L 1973, ch 603]).[3]_
*1069 The removal of probation, both within New York City and in the rest of the State, from judicial to executive branch control was presaged by the establishment of an independent Division of Probation in the executive branch in 1970 (Executive Law § 240; L 1970, ch 479). Although the Division had been subject to executive control as part of the Department of Correction since 1929 (Correction Law of 1929 § 14), the 1971 move was designed to create an independent State agency, headed by a director responsible to the Governor. (Governor’s Memorandum, 1970 McKinney’s Session Laws of NY, at 3102.) It is significant that in his comments on this legislation, when proposed, the State Administrator of the Courts expressed serious reservations that “the reiteration impliedly contained in this bill of the concept that probation services, which are in reality an arm of the courts, are also under the supervision of the executive branch, is most troublesome.” The Administrator then suggested “study of the possibility of eventually transferring the Division of Probation into the judicial branch of government” (letter from the State Administrator of the Courts, dated Apr. 28, 1970 [see, materials in Bill Jacket, L 1970, ch 479]). This suggestion, however, was never acted upon; instead, by 1973 the Legislature had given full control over probation services throughout the State to the Executive Department. And, in 1973, as has been seen, it was with the approval of the Judicial Conference, which had abandoned its earlier opposition.
The predictable court challenge to this restructuring came in Matter of Bowne v County of Nassau (37 NY2d 75 [1975]), which concerned Executive Law § 256 (transfer of probation control to the County Executive). The case concerned an employee of the Nassau County Department of Probation who contended that he was an employee of the Unified Court System and that, therefore, the County Executive had no authority to terminate his *1070 employment. The Court of Appeals, however, framed the issue for its decision as “whether the Probation Department is * * * constitutionally a part of the unified court system” (supra, at p 79). The Per Curiam answer was that probation agencies are neither “expressly, or even necessarily, an integral part of the unified court system. Since their relationship to the administration of justice itself is although often intimate, always collateral, it is reasonable that their place in the judicial scheme should depend solely upon legislation” (supra, at p 80). Buttressing this conclusion is NY Constitution, article XVII, § 5, which authorizes the Legislature to “provide for * * * systems of probation and parole of persons convicted of crime.” Thus, while Bowne concerned employment rights, it is evident that a Probation Department is not constitutionally part of the judicial branch. (See also, 1975 Opns Atty Gen 25, 26 [Probation Departments “are part of the executive branch of the county government and. are no longer subject to the authority of the judicial branch of government”]; People v Zavaro, 126 Misc 2d 237 [Nassau County Ct].)
Having concluded that the Department is an executive branch agency, and absent other statutory or constitutional provision, it is my view that it cannot be considered in any manner a part of the judiciary. The legislative intent is clear that probation is no longer an arm of the court, even though, to paraphrase Bowne (supra), probation services are intimately related to the administration of justice. Today, judicial authority over probation is limited to that provided in CPL article 410 and related sections (e.g., CPL 390.30, 390.50, 400.10 et seq.).
Since the Department is not an arm of the court, the next question is whether, in the absence of the District Attorney, the Department may prosecute the violation. There is no statutory or State constitutional bar to allowing the Department to so proceed. Nor does there appear to be a Federal constitutional bar. Indeed, the United States Supreme Court in Gagnon v Scarpelli (411 US 778, 789 [1973]) stated that: “In a [probation] revocation hearing * * * the State is represented, not by a prosecutor, but by a parole [or probation[4]] officer”. What the Supreme Court has recognized is the traditional and apparently constitutionally unoffensive role of the probation officer. Or to put it as one commentator has: “While it is the judge who actually revokes probation, it is the probation officer who initiates the probation action and largely controls it. In a very high *1071 proportion of cases, the judges’ revocation action is in accordance with the probation officer’s recommendation” (Czajoksi, Exposing the Quasi-Judicial Role of the Probation Officer, 39 Fed Probation 9, 12).
A fortiori, if the Department can be represented by a probation officer, it should be permitted to be represented by a probation attorney. Supporting this conclusion is Gagnon v Scarpelli (supra, at p 787), where the Supreme Court, in deciding whether an attorney is constitutionally required for an indigent defendant at a probation violation hearing, the court observed that: “If counsel is provided for the probationer * * * the State in turn will normally provide its own counsel.” Since an attorney is provided for the defendant (CPL 410.70 [4]), the State may similarly be represented. Defendant argues, however, that County Law § 700 (1) mandates that only the District Attorney, who has the duty to “conduct all prosecutions for crimes and offenses” may prosecute the violation since it is a part of a criminal prosecution. (Cf. CPL 1.20 [31].) I disagree. First, it is by now a familiar principle that a District Attorney in this State does not possess exclusive prosecution authority (People v Van Sickle, 13 NY2d 61 [1963]), and private persons and attorneys have been permitted to prosecute criminal cases, despite the absence of express statutory authority. And here, of course, the probation attorney is not a private person, but the counsel to an independent executive agency with statutory responsibility over the very subject matter involved; that there is no express authority to proceed should not prevent the probation attorney from acting. Furthermore, where the District Attorney has declined to appear, he has by implication consented to the Department proceeding by its own attorney to prosecute the violation.
Accordingly, for the foregoing reasons, I hold that the probation attorney, in the absence of the District Attorney, may fully prosecute this probation violation.

. In this county, as appears to be also the general practice in the Criminal Courts of this city, the District Attorney routinely declines to appear and participate in probation violation proceedings.

. All legal memoranda were forwarded to the Deputy Chief of the Trial Division, District Attorney’s office, requesting the views of the District Attorney; no response was received. Rather, it was stated in court by the probation attorney that she had been advised by the Deputy Chief that the District Attorney’s office would not be filing a response and would not be participating in these proceedings.

. Interestingly, in 1971 however, the Judicial Conference had vigorously opposed, “as both administratively unsound and of dubious constitutionality” *1069 the removal of probation services, outside of New York City, from the control of the court system. It argued that “the [probation] function itself is judicial in nature”, and that it was “unsound to place the ultimate responsibility for the probation function in the executive branch”. (Letter from the State Administrator of the Courts, dated June 2, 1971 [see, materials in Bill Jacket, L 1971, ch 387].) Similar views were expressed by the Presiding Justices of the three Appellate Divisions which would be affected by this legislation (letters from Justice Rabin, 2d Dept, dated June 4, 1971; from Justice Herlihy, 3d Dept, dated June 8, 1971; from Justice Goldman, 4th Dept, dated June 9,1971 [Bill Jacket, L 1971, ch 387]). The Legislature, however, enacted Executive Law § 256 (L 1971, ch 387) and accomplished the removal of probation, outside of New York City, from the judiciary. “[D]espite the grave reservations expressed by the Administrative Board, Ch. 387, L. 1971 was enacted to place county probation services outside of the City of New York under the supervision and control of the executive branch of government instead of the judicial branch”. (See, Seventeenth Ann Report of NY Judicial Conference, 1972, at 20.)

. The court used the words “probation or parole officer” throughout its opinion (see, e.g., pp 783, 784) and had earlier stated that there was not “any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation” (supra, at p 782).