830 So.2d 1274 (2002)
Don MOORE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-CP-01230-COA.
Court of Appeals of Mississippi.
November 19, 2002.
Don Moore, Pro se, attorney for appellant.
Office of the Attorney General by Charles W. Maris, Jr., attorney for appellee.
Before McMILLIN, C.J., THOMAS, and BRIDGES, JJ.
McMILLIN, C.J., for the court.
¶ 1. Don Moore was placed on "house arrest" after entering a guilty plea. He later was found in violation of the conditions for house arrest, removed from that status and placed in the general prison population. His post-conviction relief motion was denied without a hearing. He appeals, arguing that he should have been given a hearing and that there was no authority for the Department of Corrections to revoke his suspended sentence. We find no error and affirm.

Facts
¶ 2. Don Moore pled guilty on May 3, 2000, to having uttered a forged check. He was given a ten-year sentence and placed for one year in the Intensive Supervision Program (colloquially known as "house arrest"). The form language in the sentencing order provided that the trial court would retain jurisdiction for one year. If Moore completed the program successfully, the Department of Corrections would notify the trial court of that success. The court would then have the option of placing Moore on supervised probation for the remainder of his term. A hand written addition to the order stated that "postrelease *1275 supervision for a period of 3 years will follow successful completion of house arrest program for 1 year." Failure would allow the Department of Corrections without further court order to place Moore in any facility that it "deemed appropriate" to complete the sentence.
¶ 3. Moore violated the terms of house arrest by testing positive for cocaine. The Department of Corrections removed him from house arrest and incarcerated him. According to a motion that he filed on March 12, 2001, the positive drug test occurred on May 9, 2000, and he was taken into custody nine days later. On July 17, 2001, Moore filed for post-conviction relief. He argued that he had not knowingly and intelligently pled guilty, that he had not been given a hearing before removal from house arrest, and that only a court could revoke the suspended sentence that he believes he had received. On July 25, 2001, the motion was denied without a hearing. Moore appeals.

I.

Necessity of hearing
¶ 4. Moore begins with a two step argument. He states that his guilty plea was not intelligently and voluntarily entered and that as a consequence he should have been given an evidentiary hearing on his post-conviction relief motion. These are the trial courts obligations on a plea: "Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." URCCC 8.04 A.3. The alleged specific defect in the factual basis arises from an answer he gave during the plea colloquy. After the trial court summarized the facts of the charge of uttering a forgery and asked if he had committed those acts, Moore answered, "Well, yes sir. I signed my name to it." In his pleadings for post-conviction relief, he argues that if all that he did was sign his name to the check, "there is no factual basis for the charge of uttering a forgery," and instead he was only guilty of false pretenses.
¶ 5. Moore is correct that "uttering" a forgery requires presenting or "publishing" it, which acts as an assertion that the forgery is in fact "true." Miss.Code Ann. § 97-21-59 (Rev.2000). The crime includes the need for a forgery, while "uttering it is a declaration that it is good, with an intention or offer to pass it." BLACK'S LAW DICT. 1547 (6th ed.1990).
¶ 6. We do not interpret Moore's answer at the plea hearing as narrowly as he does. The trial judge described the events as set out in the indictment, including that Moore had presented the check to "Steven Nicks at the B P Station," and that Moore knew this was "a false and forged or counterfeit document." Moore answered both that he understood the charge and that he did in fact commit the crime. He also signed a petition to enter a guilty plea, agreeing that his attorney had explained the charges to him and that he understood them.
¶ 7. We find no defect in the factual basis. If the trial judge finds after review of a motion for post-conviction relief and its attachments that "plainly ... the movant is not entitled to any relief," the judge may dismiss the motion without a hearing. Miss.Code Ann. § 99-39-11(2) (Rev.2000). That was appropriate here as to the allegations on the validity of the plea.

II.

Revocation of Suspended Sentence
¶ 8. Moore was removed from the Intensive Supervision Program and placed in the general inmate population to serve his ten year sentence. He alleges that this *1276 constituted a revocation of a suspended sentence, and due process requires that he be given a court hearing first. Had Moore been given a suspended sentence and placed on probation, the procedures established by the United States Supreme Court for revocation of probation were due. These requirements are established in Gagnon v. Scarpelli, 411 U.S. 778, 781-782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), adopting the procedures for revocation of parole from Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
¶ 9. However, Moore had not received a suspended sentence. The court order gave him a ten-year sentence, the first year of which was to be served in the Intensive Supervision Program. If he failed to comply with his obligations under that program, the Department of Corrections could remove him and place him in the general population without further order of the court. If on the other hand, Moore did complete the program, the order required that the Department of Corrections notify the court, which would then have the "option" of suspending the remainder of the sentence and placing Moore on probation. A hand written addendum to the order stated that "post release supervision for a period of 3 years will follow successful completion of house arrest." There is some inconsistency between the language of the form order, which refers to the option of release, and that of the hand written addition, which determined that Moore would receive probation after successful completion of "house arrest." Trial courts are now prohibited from requiring completion "of the intensive supervision program as a condition of probation or post-release supervision." Miss.Code Ann. § 47-5-1003(4) (Rev.2000), language added by 2000 Miss. Laws ch. 622, § 1, eff. July 1, 2000. When Moore was sentenced on May 3, 2000, that statutory bar did not yet exist.
¶ 10. There are two levels of analysis that we find necessary to determine what procedure Moore was due. The first involves his removal from house arrest. The second is whether this conditional probation created additional process needs.
¶ 11. The process that is due to someone under the supervision of the Department of Corrections depends on the interests that the Department seeks to affect. The interests of a person in the Intensive Supervision Program have been determined not to rise to "liberty interests."
[A]n inmate in the Intensive Supervision Program remains a prisoner subject to the exclusive jurisdiction of the Department of Corrections, being merely subject to an alternative form of confinement. Therefore, ... removing a prisoner from the house arrest program and returning him to the general prison population is nothing more than an internal reclassification matter for which the inmate enjoys no liberty interest that would trigger the need for the kind of due process hearing necessary to revoke probation or parole.
Lewis v. State, 761 So.2d 922(¶ 3) (Miss.Ct. App.2000). By statute, such a person is within the "complete jurisdiction of the department and subject to removal from the program by the classification committee." Miss.Code Ann. § 47-5-1003(3) (Rev.2000).
¶ 12. The Department of Correction's discretion is still subject to procedural requirements, but they have been established by regulation. An inmate on house arrest is returned to a Department of Corrections facility for an administrative hearing should there be a positive drug test or other violation of the conditions of the program. Morris v. State, 767 So.2d 255 (¶ 12) (Miss.Ct.App.2000), overruled to extent *1277 inconsistent with Edwards v. Booker, 796 So.2d 991 (¶ 21) (Miss.2001). The regulations governing reclassification do not refer to judicial review, but there is a statutorily required administrative procedure in the Department of Corrections that allows inmates to file grievances about a variety of internal actions including those of the classification committee, have those reviewed by an independent body, and then seek judicial review. Miss.Code Ann. §§ 47-5-801 through 47-5-807 (Rev.2000); but cf. Edwards, 796 So.2d at (¶ 21) (Supreme Court may have held that there is direct appeal of reclassification without using the internal grievance procedure first), with Babbitt v. State, 755 So.2d 406 (¶ ¶ 15-16) (Miss.2000) (after classification committee has made a final decision on removal from house arrest, the inmate's next step is to challenge that through the grievance procedure of Section 47-5-803). There is no challenge to the reclassification process in this appeal, only a challenge to the denial of post-conviction relief.
¶ 13. Had Moore successfully completed the house arrest program and then been given a suspended sentence, he would have had the right to a hearing prior to a revocation. He never reached that point.
¶ 14. The other procedural rights question arises from the sentencing order, which provided that after successful completion of the intensive supervision program, Moore would be placed on three years of post-release supervision. The United States Supreme Court has found that no "liberty interest" has been affected when an inmate who has been told that he will receive parole if certain conditions are met, is later told that he has failed to meet them and parole has been "rescinded."
We do not doubt that respondent suffered "grievous loss" upon OAPA's rescission of his parole. But we have previously "reject[ed] ... the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). In this case, as in our previous cases, "[t]he question is not merely the `weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the `liberty or property language of the Fourteenth Amendment.'" Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
Jago v. Van Curen, 454 U.S. 14, 17, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). The significance to the inmate of the expectation of parole or probation cannot be doubted, but it is not protected by liberty interest procedures.
¶ 15. We find that what occurred to Moore was the rescission of the possibility of probation, which was caused by his failure in the house arrest program. He was entitled to no further procedure.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS ARE ASSESSED TO CALHOUN COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.