# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 21, 2013 Session

## STATE OF TENNESSEE v. TERRY MARCUM

### Appeal from the Circuit Court for Sevier County
### Nos. 16388-II & AP120006-II    Richard R. Vance, Judge

### No. E2012-01846-CCA-R3-CD - Filed July 30, 2013

The Defendant, Terry Marcum, appeals the Sevier County Circuit Court's revoking his probation for two counts of domestic assault and ordering him to serve his consecutive sentences of eleven months, twenty-nine days.  The Defendant contends that the trial court abused its discretion in revoking his probation.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Randall E. Reagan (on appeal) and Jordan Long (at revocation hearing), Knoxville, Tennessee, for the appellant, Terry Marcum.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; James B. "Jimmy" Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November 2011, in case number AP120006-II, the Defendant pleaded guilty to driving under the influence (DUI) in general sessions court and was sentenced to eleven months, twenty-nine days to be served on probation.  In case number 16388-II, the Defendant pleaded guilty two weeks later to two counts of domestic assault, child abuse, and resisting arrest and was sentenced to consecutive sentences of eleven months, twenty-nine days to be served on probation for each offense.  The court also ordered that the sentences in case number 16388-II be served consecutively to the DUI sentence in AP120006-II.

In case number AP120006-II, Probation Officer April Arrants filed a probation violation warrant on June 5, 2012, alleging that the Defendant committed the offense of

domestic assault, failed to provide documentation of completion of DUI School and the victim impact panel as conditions of his probation, and failed to provide receipts of payments for costs, fines, and fees. In case number 16388-II, Probation Officer Michael McCarter filed a probation violation warrant on June 13, 2012, alleging that the Defendant failed to keep his appointment with his probation officer, failed to attend and show proof of attending "batterer intervention A&D" classes, and failed to pay court costs and supervision fees. The warrant also alleged that the Defendant's whereabouts were unknown. The offenses from case number 16388-II were the subject of the revocation hearing.

At the revocation hearing, Probation Officer Michael McCarter testified that he had supervised the Defendant since November 14, 2011. He said the trial court's probation order required the Defendant to report to his office for an initial intake interview. He said that he met the Defendant in court and scheduled an appointment for the intake interview but that the Defendant failed to attend. He said that although he could not recall the date of the appointment, his practice was to schedule it within two weeks of a defendant's court appearance. He said he followed this practice when scheduling the Defendant's intake interview. He denied knowing why the Defendant failed to attend the meeting and said his records did not show the Defendant was incarcerated.

Mr. McCarter testified that when he spoke to the Defendant in court, he explained the conditions of probation to the Defendant and that the Defendant signed the order of probation. A copy of the order showing the Defendant's signature and the conditions of probation was received as an exhibit. He said that the Defendant was arrested for new criminal offenses, that the Defendant's wife or girlfriend was the victim of the charges, and that she was the victim in the previous domestic assaults.

On cross-examination, Mr. McCarter testified that the Defendant had numerous criminal cases in Sevier County and that the Defendant was supervised by "private probation, PSI." He said that his supervision of the Defendant was scheduled to begin after the Defendant completed his probation for the DUI conviction because the sentences for the offenses to which he pleaded guilty were consecutive to the DUI conviction. He said that when he met with the Defendant at the guilty plea hearing in case number 16388-II, he scheduled an appointment for the initial intake interview. He said that he wrote down the appointment but that he left the information at his office. On redirect examination, he stated that his practice was to schedule an intake interview the day a defendant was assigned to him.

Tracy Henry testified that she was a probation officer with PSI and that she took over April Arrants's case load previously. She said the Defendant's file was closed because he was ordered to serve his sentence for the DUI conviction. She said the Defendant's probation was revoked because he was arrested for domestic assault and violating an order of protection. She said that the Defendant was sentenced to serve eleven months, twenty-

nine days for the domestic assault and ten days for violating the order of protection. She said that in addition to the new criminal charges, the Defendant failed to complete DUI School, failed to attend the victim impact panel, and failed to pay court costs.

On cross-examination, Ms. Henry testified that the Defendant pleaded guilty to the DUI in November 2011. She agreed that the Defendant reported regularly and paid supervision fees until his arrest. She denied that the Defendant paid court costs.

Cheryl Marcum, the Defendant's wife, testified that they married in 2000 and that the Defendant assaulted her in January 2011. She blamed excessive alcohol consumption for the Defendant's actions. She agreed that on April 19, 2012, the Defendant violated the order of protection she obtained after the first domestic assault and said that the Defendant pleaded guilty to the violation. She stated that she was out of town for a couple days and that it looked as though someone had been inside her home when she was gone. She said that as she and her son were cleaning the home, she saw the Defendant outside. She said that the Defendant was bleeding from a head wound, that he entered the home to wash the wound, and that she told him to leave. She said the Defendant threw the food processor cover at her, although it did not strike her. She did not recall telling the responding police officer that she felt threatened or that she feared for her life. She did not recall the Defendant's threatening her pets. She denied having contact with the Defendant since he violated the order of protection. On cross-examination, she stated that she was not present when the Defendant pleaded guilty to assault and to violating the order of protection.

The Defendant testified that in case number 16388-II, he pleaded guilty in November 2011 to four misdemeanors and that two weeks before his guilty plea, he pleaded guilty to DUI. Regarding the DUI conviction, he said he was sentenced to eleven months, twenty-nine days to be served on probation. He said that Probation Officer Heather McCoy and his attorney told him to complete his county probation and then report to state probation. He stated that he met with Mr. McCarter after he pleaded guilty to the four misdemeanors but that he did not schedule an appointment for an initial intake interview.

On cross-examination, the Defendant testified that he was on probation for DUI and that he violated the conditions of his probation by violating the order of protection and assaulting his wife. He said that he was serving sentences for DUI and domestic assault at the time of the revocation hearing and that he was served with the probation violation warrant in case number 16388-II while in confinement. He said he understood that his probation for the four misdemeanor convictions would begin after his DUI probation.

The Defendant testified that he reviewed the probation order with Mr. McCarter while in court and that he signed the order. He denied meeting with Mr. McCarter again. He stated that he violated the order of protection because he went to the family home to care for the

dogs while his wife was in Florida. He said that he knew his wife was not there and that he stayed there for three or four days. He said that he and his wife argued when she returned and that he consumed "some beers," although he denied being intoxicated. He said they argued because she came home. He said he did not know she was coming home that day and denied intending to violate the order of protection. He denied leaving immediately and denied knowing he violated the order. He denied contacting his wife and said she contacted him. He denied throwing anything at his wife and said he threw something at the trash can. He denied threatening his wife or her dogs. He said the head wound was caused by a two-by-four that fell while he was clearing out things from under the deck.

On redirect examination, the Defendant testified that regarding the DUI conviction, he met with his probation officer as required and never missed an appointment. He said he would have met with Mr. McCarter had he known it was required.

In case number 16388-II, the trial court found that the uncontradicted proof showed the Defendant failed to report to Mr. McCarter. It found that the Defendant met with Mr. McCarter while in court, that he signed the probation order, and that he was told to report for an intake interview. The court found that the Defendant was already being supervised by county probation for the DUI conviction and that the DUI sentence was consecutive to the effective four years' probation in case number 16388-II. The court found that active supervision in case number 16388-II would not begin until the DUI supervision was completed. The court noted that a difference existed between active supervision and probation.

The trial court stated that it attempted to avoid having a defendant report to two probation officers simultaneously because it was costly and time consuming. The court said, though, that nothing in the record showed the Defendant would not be supervised in case number 16388-II. The court found that regardless of whether the Defendant was to be actively supervised in case number 16388-II before the expiration of the supervision in the DUI case, the Defendant was ordered to report for an intake interview, which he failed to do. The court found that the Defendant was on probation and subject to the conditions of release.

The trial court found that the Defendant violated the conditions of his probation by failing to report for an intake interview, by committing domestic assault, and by violating the order of protection. The court stated that the Defendant had no right to be at his wife's house and found that the Defendant violated his probation by committing new criminal offenses while on probation. The court revoked the Defendant's probation and ordered the two domestic assault sentences in case number 16388-II to be served in confinement. The court also ordered the remaining two sentences be served on supervised probation. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation for the domestic assault convictions in case number 16388-II. He argues that his due process rights were violated because he was not provided notice of the grounds upon which the State sought revocation and that the court based its decision on an "erroneous assessment" of the evidence. The State conceded at oral argument that the Defendant's acquiring new criminal charges was not alleged in the revocation warrant but argues that the court properly revoked the Defendant's probation because he failed to report for an intake interview. We conclude that the Defendant is not entitled to relief.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing *Carver v. State*, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation. T.C.A. §§ 40-35-308(a), (c), -310 (2010); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).

In probation revocation hearings, due process requires "'written notice of the claimed violations of . . . probation[.]'" *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *see State v. Michael Harlan Byrd*, No. 01C01-9609-CC-00411, slip op. at 9 (Tenn. Crim. App. May 1, 1998) (concluding the trial court erred by allowing the State to rely on a psychological report to prove a ground for revocation when no notice of the State's intention to use the report was provided to the defendant). Likewise, "[a] revocation based on grounds not alleged and noticed to the defendant violates due process." *State v. Robert Franklin Delzell, III*, No. M2006-01822-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App. June 27, 2007); *see State v. Chad Allen Conyers*, No. E2004-00360-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App. Mar. 9, 2009) (stating that "due process requires a defendant be given advanced written notice of the grounds upon which the revocation . . . is to be based" (citations omitted)).

The record shows that the State sought revocation of the Defendant's probation in case number 163288-II on the grounds that the Defendant failed to keep his appointment with his probation officer, failed to attend and show proof of attending "batterer intervention A&D" classes, and failed to pay court costs and supervision fees. The probation violation

warrant also alleged that the Defendant's whereabouts were unknown. The trial court revoked the Defendant's probation, in part, based on its finding that he violated the terms of his probation by committing domestic assault and by violating the conditions of the order of protection. Nothing in the record shows that the Defendant was given prior notice that the State sought revocation based on his acquiring new criminal charges. We conclude that the court's reliance on the Defendant's acquiring new criminal charges was improper. We also conclude, as we discuss below, that the error was harmless in light of the court's relying on the Defendant's failure to report to Mr. McCarter for an intake interview.

The Defendant also argues that the trial court revoked his probation based upon an "erroneous statement" of the evidence. He claims that the court failed to recognize that the Defendant did not understand he was required to report to Mr. McCarter immediately because he was still being supervised by county probation for the DUI conviction. The Defendant's argument is misplaced. Mr. McCarter testified that he scheduled an appointment for the Defendant to complete an intake interview. Although Mr. McCarter stated that he could not recall the specific date of the appointment and did not have his notes in court, his practice was to schedule an appointment the day a defendant was assigned to him. The court credited Mr. McCarter's testimony that he met with the Defendant while in court, that he reviewed the probation order with the Defendant, that the Defendant signed the order, and that he scheduled an appointment for the Defendant to report for an intake interview within two weeks. Likewise, the probation order signed by the Defendant required him to "make a full and truthful report to his/her Probation Officer in person and/or in writing as directed." An appointment was scheduled for the Defendant to complete this probation requirement, but the Defendant failed to attend. We conclude that the trial court had the authority to revoke the Defendant's probation for the domestic assault convictions. The Defendant is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE