J-S09010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY JOSEPH KONIOW, | : | |
| | : | |
| Appellant | : | No. 1671 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 9, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0005340-2006

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY JOSEPH KONIOW, | : | |
| | : | |
| Appellant | : | No. 1672 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 9, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000741-2013

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                        Filed: May 21, 2020

Appellant, Gregory Joseph Koniow, appeals from the May 9, 2019

judgment of sentence imposed following the revocation of parole.  We affirm.

On June 27, 2007, Appellant entered a guilty plea to burglary, 18

---

[*] Retired Senior Judge assigned to the Superior Court.

Pa.C.S. § 3502(a), on docket CP-15-CR-0005340-2006, and he was subsequently sentenced to 364 days to one year and 364 days of confinement, followed by ten years of probation. On October 7, 2013, Appellant entered a guilty plea to receiving stolen property ("RSP"), resisting arrest, and possession of a controlled substance, 18 Pa.C.S. §§ 3925(a), 5104, and 35 P.S. § 780-113(a)(16), respectively, on docket CP-15-CR-0000741-2013 and was sentenced to State Intermediate Punishment after assessment at a state correctional facility.

On July 7, 2017, Appellant was sentenced to Chester County's Swift Alternative Violation Enforcement Supervision ("SAVE") program as a result of violations at both CP-15-CR-0005340-2006 and CP-15-CR-0000741-2013. Appellant was removed from SAVE on August 7, 2018, "for incurring ten (10) supervision sanctions within a year." Trial Court Opinion, 8/13/19, at 6 (citing N.T., 5/9/19, at 7–8). The trial court reported as follows:

> As a result of failing to complete SAVE supervision, [Appellant] was found in violation at a prior Gagnon II hearing[1] and sentenced to eight (8) to twenty-three (23) months incarceration but was made eligible for reparole directly into a long-term, inpatient, treatment facility after serving eight (8) months in jail. Consequently, on February[] 8, 2019, [Appellant] was reparoled by Court Order directly into Keenan House inpatient treatment with the condition that he successfully completes treatment. See Parole Order; 2/5/19.

---

[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

Trial Court Opinion, 8/13/19, at 6. Appellant was discharged from Keenan House for unsuccessful completion of the program on April 16, 2019, to the Chester County Prison. Appellant's Brief at 7. A *Gagnon I* hearing was held on April 17, 2019. Violation Hearing Report ("Report"), docket entry 62, 4/24/19. The Report summarized the evidence offered in support of parole revocation as follows:

> Case #5340-06 involves a re-parole period for Violation of Probation (Burglary-Count I) granted effective 8/21/18 and scheduled to expire on 5/9/20. Case # 0741-13 involves a re-parole period for Violation of Probation (Receiving Stolen Property-Count 2, Resisting Arrest-Count 3, and Possession Count 5) granted effective 2/7/17 and scheduled to expire on 5/9/20. The Probation Officer testified that [Appellant] failed to complete an inpatient program and in August 2018, as a result of the violation, he was removed from the state program. [Appellant] was paroled on 2/8/19 to an inpatient program and was then unsuccessfully discharged from that program on 4/16/19. The circumstances surrounding [Appellant's] discharge include high levels of resistance, he was argumentative, and he was trying to dictate his length of treatment. This is the seventh violation on the 2006 case and the third violation of the 201[3] case. The Bench Warrant was issued on 4/16/19 and executed on that same day.

*Id.* at ¶ 3. The Report summarized Appellant's evidence at the hearing as follows:

> Counsel and [Appellant] are suspicious as to the circumstances surrounding [Appellant's] discharge from treatment since [Appellant] had been at the program since February 2019 and was approximately 20 days shy of completing the program. [Appellant] testified that he did not act disrespectful and does not know why he was discharged. There was an incident where [Appellant] was given permission by the weekend staff to call a halfway house, however when his primary therapist returned to work on Monday, [Appellant] was not supposed to have been given permission to make that call.

- 3 -

Report, 4/24/19, at ¶ 4. Appellant's *Gagnon II* hearing was scheduled for May 9, 2019, with the detainer intact. *Id.* at ¶ 7.

A *Gagnon II* hearing was held on May 9, 2019, following which Appellant's parole on docket CP-15-CR-0005340-2006[2] was revoked. The court sentenced Appellant "on the underlying conviction for burglary to the full back time of [fourteen] months, [twenty-nine] days incarceration." Trial Court Opinion, 8/13/19, at 2. On docket CP-15-CR-0000741-2013,[3] Appellant's parole was revoked, and the trial court sentenced Appellant "on the underlying convictions for . . . [RSP], resisting arrest, and possession of a controlled substance to the full back time of [fourteen] months, [twenty-nine] days incarceration," concurrent to the sentence on docket CP-15-CR-0005340-2006.[4] *Id.*; *see* Sentencing Sheet, 5/9/19; N.T., 5/9/19, at 6, 19–20. The trial court granted Appellant the applicable credit for time served on each sentence. N.T., 5/9/19, at 19–20.

---

[2] The trial court notes that Appellant "had already incurred six (6) prior revocations on this docket number." Trial Court Opinion, 8/13/19, at 2 n.3.

[3] The trial court notes that Appellant "had already incurred two (2) prior revocations on this docket number." Trial Court Opinion, 8/13/19, at 2 n.4.

[4] The trial court notes that it "accepted the adult probation department recommendations" regarding sentencing. Trial Court Opinion, 8/13/19, at 1.

On May 20, 2019,[5] Appellant filed petitions for reconsideration of sentence[6] wherein the sole issue raised was that the sentence imposed was "not appropriate due to a technical violation rather than a new conviction." Petition for Reconsideration of VOP Sentence, 5/20/19, at ¶ 2(b). The trial court denied reconsideration on May 31, 2019. Order, 5/31/19. Appellant filed timely separate notices of appeal on June 7, 2019, and the trial court directed Appellant to file concise statements of errors complained of on appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[7] On December 2, 2019, this Court granted Appellant's "Unopposed Application for Consolidation Pursuant to Pa.R.A.P. 2138." Order, 12/2/19.

Appellant raises the following single issue on appeal:

Did the trial court err in concluding that Appellant was not entitled to a full Gagnon II hearing when disputing the allegations underlying a violation of probation/parole in violation of Appellant's right to confrontation and due process?

---

[5] The motions for reconsideration of sentence were timely filed. The ten-day filing period technically expired on May 19, 2019. However, as that date was a Sunday, Appellant had until Monday, May 20, 2019, to file a post-sentence motion. 1 Pa.C.S. § 1908 (whenever last day of any period referred to in any statute "shall fall on Saturday or Sunday, or on any day made a legal holiday . . . such day shall be omitted from computation."

[6] The trial court erroneously states that Appellant "did not file any post-sentence motions." Trial Court Opinion, 8/13/19, at 2.

[7] The trial court filed a single opinion addressing both docket numbers. Trial Court Opinion, 8/13/19, at 1 n.2.

Appellant's Brief at 5.[8]

When reviewing the results of a revocation hearing, this Court is limited to determining the validity of those proceedings, the legality of the judgment of sentence imposed, and the discretionary aspects of the sentence imposed. *Commonwealth v Cartrette*, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*). Initially, we note that Appellant made no mention regarding the completeness of the *Gagnon II* hearing in his post-sentence motions. As noted *supra*, the only issue raised in the petition for reconsideration of sentence was a request to "reconsider and reduce his sentence by making [Appellant] eligible for reparole after serving eight months instead of serving the balance of the maximum sentence." Petition for Reconsideration of VOP Sentence, 5/20/19, at ¶ 2(c). Generally, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). We previously held that where a probationer failed to complain about the lack of a *Gagnon I* hearing before his probation was revoked, the claim was waived. *Commonwealth v. Perry*, 385 A.2d 518, 519 (Pa. Super. 1978).

In *Commonwealth v. Collins*, 424 A.2d 1254 (Pa. 1981), our Supreme Court was presented with a scenario, where, following revocation of his probation, the appellant filed an appeal raising several objections related to

---

[8] Appellant has filed two identical briefs with cover sheets identifying the lower court docket numbers. We will refer to Appellant's Brief in the singular.

the revocation proceeding as Appellant raises herein. *Id.* at 1254. The Court explained:

> Appellant now raises several objections to the violation of probation proceeding. He contends that there was inadequate notice given to him; **that he was denied the right to confront adverse witnesses**; that he was denied a speedy revocation hearing; and **that the sentencing process failed to comport with due process**.

*Id.* (emphases added). Our Supreme Court concluded that the appellant's failure to raise the issues, *inter alia*, in his post-sentence motion constituted waiver. Because Appellant herein failed to raise the issue relating to the *Gagnon II* hearing in his post-sentence motions, we conclude the issue is waived. Even if not waived, however, we conclude it lacks merit.

As detailed in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the purpose of a *Gagnon I* hearing is to determine whether there is probable cause to believe a parole violation has occurred. When a finding of probable cause is made, a second, more comprehensive *Gagnon II* hearing is required to render a final revocation decision. *Id.* at 784. Thus, the *Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards. *Id.* at 786.

This Court has consistently recognized that among the rights afforded to a defendant at a probation or parole revocation hearing is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."

***Commonwealth v. Colon***, 102 A.3d 1033, 1040 (Pa. Super. 2014) (citations omitted).

Despite the wording of Appellant's proffered issue, he is not alleging that he was not afforded a ***Gagnon II*** hearing. Rather, while conceding that he was discharged from Keenan House, he asserts, that he wanted to "dispute the allegations underlying the discharge" and was not permitted to do so. Appellant's Brief at 16. Appellant maintains, "The Commonwealth did not present any witnesses and Appellant was not afforded the ability to cross-examine or confront any of the witnesses that alleged the behavior resulting in the removal of Appellant from treatment." ***Id.*** at 17.

Assuming, *arguendo*, that the issue presented is not waived, we would rely on the trial court's explanation, in conjunction with testimony offered at the ***Gagnon II*** hearing, in concluding that Appellant's issue lacks merit. The trial court stated:

> It is important to note that [Appellant] has also failed to complete the Chronic Substance Abuse Program ("CSAP") supervision multiple times in this County. It should also be noted that [Appellant] has been to inpatient treatment approximately sixteen (16) times, including receiving a prior unsuccessful discharge in 2017 from Hillside Detox and Inpatient Treatment Center for displaying threat[en]ing behavior toward a counselor. The record further reflects that [Appellant] left Gaudenzia House against medical advice in 2009. It is beyond dispute that numerous, valuable, County resources have been expended on [Appellant] in an effort to rehabilitate him. Accordingly, it is evident from the record that the [c]ourt has attempted, albeit unsuccessfully, to provide [Appellant] with the necessary tools and skills to overcome his substance abuse disorder.

Trial Court Opinion, 8/13/19, at 6 n.7. The trial court continued:

- 8 -

Because [Appellant] was participating in [c]ourt[-]ordered treatment, the dispositive issue for the [c]ourt's consideration during the May 9, 2019 Gagnon II hearing was only whether [Appellant] successfully completed the substance abuse treatment. Although during the Gagnon II proceedings, [Appellant] requested a separate hearing on whether he was discharged by Keenan House without good cause, said hearing was completely unnecessary, collateral, and a waste of valuable County resources.[8]

[8] The [c]ourt takes judicial notice of the Keenan House Proof of Receipt of New Client Disclosure Statements executed by [Appellant] on February 8, 2019, the same day he was paroled to that facility. Attached for the Superior Court's review as Court Exhibit "A" is that Disc[lo]sure.

[Appellant] was placed in an inpatient treatment program that contracts with Chester County to provide [c]ourt ordered treatment services. After sixteen (16) similar placements, [Appellant] cannot claim ignorance of inpatient protocol. The Keenan House New [C]lient Disclosure Statement clearly advised [Appellant] of its internal grievance process, which all new patients must read and sign prior to receiving treatment services from Keenan House. Keenan House's informal and formal grievance procedures are the appropriate way for a patient to initially challenge any perceived mistreatment from staff while in the treatment facility. (See Keenan House Proof of Receipt of New Client Disclosure Statements, 2/8/19).

Only after complying with the internal grievance procedures of a treatment provide[d] should a patient challenge mistreatment by staff in the Court of Common Pleas. Stated differently, a patient should first exhaust all administrative remedies before raising a claim in the Court of Common Pleas. In the present case, [Appellant] did not comply with Keenan House's standard grievance procedures prior to raising the issue during his Gagnon II hearing. Instead of filing a formal grievance as directed by Keenan House, [Appellant] circumvented that process by improperly attempting to collaterally attack the factual reasons underlying his discharge from treatment during the Gagnon II hearing.

During the Gagnon II hearing, the [c]ourt had the benefit of reviewing a discharge summary obtained by adult probation from

[Appellant's] therapist at Keenan House detailing the factual allegations underlying [Appellant's] unsuccessful discharge from treatment.[9] The discharge summary outlined [Appellant's] woeful attempt at treatment and specifically referenced his aggressive, disrespectful, manipulative, and treatment resistant behaviors. This letter was sufficient for the [c]ourt to find probable cause that [Appellant] failed to successfully complete his [c]ourt[-] ordered treatment in violation of his parole. (See N.T., 5/9/19, at 8, 16–18).

> [9] It should be noted that [Appellant] does not contest that he was discharged from treatment. (N.T., 5/9/19, at 10). It is also clear that the expressed reason for [Appellant's] discharge from Keenan House herein is similar to his disruptive behaviors that have resulted in prior inpatient treatment discharge.

Trial Court Opinion, 8/13/19, at 6–7.

At the *Gagnon II* hearing, Probation Officer Joe Kemetz testified at length concerning the basis for the discharge from Keenan House. In pertinent part, Mr. Kemetz stated:

[Appellant] was in treatment from February 8th, 2019 until April 16th of 2019. I was contacted in early April by his therapist, Ms. Laura Johnson. She advised that there were some behavioral issues that they were attempting to address and redirect in treatment.

I was contacted again on April 12th, advised that the behavior had not improved and they were requesting that [Appellant be] removed from treatment. I've transcribed the discharge summary onto the supervision recommendation. It basically says there was an issue of negativity, disrespect to staff and high levels of resistance in some of the treatment material.

When a program contacts my office asking for someone to be removed, I think generally they've exhausted the efforts to try to keep them there.

> As you know, there's a significant history of both legal and treatment attempts. [Appellant] has been on CSAP numerous times in this County, and he also has been on SAVE supervision.
>
> He had previously served a state prison sentence in 2013. He did successfully complete state intermediate punishment back at that time.
>
> Your Honor, as I said, this is the seventh violation on the 2006 conviction. Original sentence was a year less a day to two years less two days with ten years of probation consecutive.
>
> We've supervised [Appellant] since 2008 when he was released on that initial sentence and, unfortunately, it's been a lot of violations during that time.

N.T., 5/9/19, at 7–9.

Appellant testified at length, offering his version of the events. He additionally disputed Mr. Kemetz's testimony. N.T., 5/9/19, at 12–19. When the trial court admonished, "You're blaming them for not doing what's necessary to change you, and the only person that is going change you is you. Do you see what you're doing?" Appellant replied, "No, I totally do. Yes, your Honor, I understand what you're saying. I do." *Id.* at 19. The hearing concluded with defense counsel's request for work release for Appellant at the warden's discretion, which the trial court permitted. *Id.* at 20.

We would agree with the trial court that based upon Appellant's "abysmal criminal and supervision history, coupled with the fact that his most recent unsuccessful discharge from Keenan House was supported by probable cause," the trial court held a complete and thorough **Gagnon II** hearing and

- 11 -

considered all of the relevant factors in revoking Appellant's parole and resentencing him. Trial Court Opinion, 8/13/19, at 8.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:5/21/20