J-S11035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DYWAYNE THORNTON | : | |
| | : | |
| Appellant | : | No. 671 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered May 7, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004305-2020

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY LAZARUS, P.J.:         **FILED: April 23, 2026**

Dywayne Thornton appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following the revocation of his parole. After careful review, we affirm.

On September 22, 2021, Thornton entered a negotiated guilty plea to one count each of corruption of minors (COM) and harassment. Thornton was immediately sentenced to 6-12 months' incarceration on the COM charge,[1] with 450 days' credit for time served, and four years of concurrent probation.[2] As conditions of his probation, the court restricted Thornton's access to computers and ordered him to refrain from consuming alcohol. Thornton was immediately paroled and began serving his probationary sentence.

---

[1] No further penalty was imposed on the harassment charge.

[2] This sentence was ordered to run concurrently to a 2020 driving under the influence sentence Thornton was already serving.

In August 2022, Thornton's urine samples tested positive for alcohol and he ultimately admitted to "slip[ping] up." *Gagnon I*[3] Probation Violation Report, 9/10/22, at 1-2. Following an October 2022 *Gagnon I* hearing, Thornton was ordered to undergo bi-weekly urine screens and re-enter drug and alcohol treatment. On January 5, 2023, Thornton's probation officer observed him walking down the street with a beer can in his hand. Upon approaching Thornton, the officer observed he was clearly intoxicated—having slurred speech, glassy eyes, and an odor of alcohol on his breath. *See Gagnon II* Probation Violation Report, 1/11/23, at 2. On January 18, 2023, the court held a *Gagnon II* hearing and concluded that Thornton had committed technical probation violations. The court ordered Thornton to comply with the county's diversion program and all recommended treatments.

Thornton was released from jail on July 20, 2023. *Id.* When Thornton failed to report to his probation officer on July 24, 2023, a probation violation warrant was issued for him. On August 2, 2023, authorities arrested Thornton, who "was [] wandering in the Sharpsburg area appearing to be very disheveled." *Id.* at 3. Thornton was transported to jail and ordered to

---

[3] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973). *Gagnon I* refers to the preliminary hearing where a probationer gets notice of alleged violations, an opportunity to appear and present evidence on his own behalf, the right to confront witnesses, and a written report of the hearing. A *Gagnon II* hearing entails a consideration of whether the facts determined warrant revocation and whether the probationer has, in fact, acted in violation of one or more conditions of his probation, which must be demonstrated by evidence containing probative value.

undergo a random urine screen, which tested positive for cocaine, marijuana, and alcohol.[4] *Id.* at 3-4.

On November 15, 2023, Thornton appeared for a probation violation hearing where Adult Probation Officer Jason Argueta testified that since Thornton's discharge from outpatient treatment, he "has continuously failed to report to the probation office as required[,] has not dealt with any of his drug and/or alcohol issue[s], and [] was under the influence during the in[stant] offense." *Id.* at 4. Probation Officer Argueta recommended that Thornton's probation be revoked and that he be sentenced "to a state [prison for a] lengthy [period of] incarceration." *Id.* at 4. The court ultimately revoked Thornton's probation and resentenced him to serve "no less than six, no more than 23 months in the custody of the warden of the Allegheny County Jail to be followed by a consecutive period of 18 months of probation." N.T. Probation Violation Hearing, 11/15/23, at 18.[5] Upon his parole, the court ordered Thornton attend an inpatient program through the Diversion Program.

In November 2023, Thornton was released on parole to the Angel's Light Inpatient Recovery Program, which he completed on January 10, 2024, and was immediately transferred to a halfway recovery home in Westmoreland County. Ultimately, the court granted Thornton permission to reside in Westmoreland County and his parole/probation supervision was transferred

---

[4] Notably, defense counsel argued at the hearing that those test samples had not been preserved at the jail and were "not able to be sent out." *Id.* at 5.

[5] Thornton also received 155 days' credit for time served. *Id.*

to that county. On December 4, 2024, Thornton tested positive for cocaine and alcohol and, after being searched incident to arrest, officers discovered images of pornography on his cellular phone.

On February 5, 2025, Thornton appeared for a *Gagnon I* hearing, where the court agreed to "bind this over for a *Gagnon II* hearing on the parole violations that have been laid out, including failure to abide by [the trial judge's] Special Orders of Court and failing to refrain from the use of alcohol and/or controlled substances." N.T. *Gagnon I* Hearing, 2/5/25, at 11. The court additionally ordered a drug and alcohol evaluation and asked Allegheny County Adult Probation Supervisor Katie Chimenti to contact Westmoreland County's Probation Department to see if it would be able to supervise Thornton. *Id.* at 19. Thornton remained detained pending the *Gagnon II* hearing. *Id.* at 17.

On May 7, 2025, the court held a *Gagnon II* hearing where Thornton's Westmoreland County Probation Officer, Justin Schneider, testified that Thornton failed to report to him upon his release from prison on February 25, 2025. N.T. *Gagnon II* Hearing, 5/7/25, at 7. Probation Officer Schnieder also testified that he looked for Thornton at his Youngwood apartment, but he was not home. *Id.* Thornton's landlord told Probation Officer Schneider that he owed back rent and damages, as well as verification of employment. *Id.* Probation Officer Schnieder went to Thornton's place of employment, but they had not heard from him since his release. *Id.* at 8. On March 4, 2025, Thornton contacted the probation department. *Id.* at 8. Probation Officer

Schneider met with Thornton the following day and he submitted to a home urine screening that tested positive for cocaine and alcohol.[6]  *Id.* at 9. Thornton initially denied having consumed alcohol or taking drugs but later admitted to having consumed alcohol.  *Id.* at 12-13.  A drug test conducted at the jail later the same day yielded a negative result.  *Id.* at 13.

The court found that the Commonwealth had proven, by a preponderance of the evidence, that Thornton had committed two technical parole violations by failing to report to or notify probation upon his release and to refrain from using drugs.  *Id.* at 24-25.  The court ultimately sentenced Thornton to serve the balance of the maximum on his COM sentence, with credit for time served.[7]  *Id.* at 32.  The court also noted that "down the road" it would consider "early release at some point [] if there is an appropriate home plan."  *Id.* at 33.

On May 30, 2025, Thornton filed an application for permission to file a post-sentence motion *nunc pro tunc*[8] to challenge the discretionary aspects of his revocation sentence and his flat sentence.  **See** Application to File Post-Sentence Motion *Nunc Pro Tunc*, 5/30/25, at 3.  The court denied the application on June 2, 2025.  Thorton filed a timely notice of appeal and a

_____

[6] This sample was not sent to a laboratory because it was too small.  *Id.* at 13.

[7] At the time of the **Gagnon II** hearing, Thornton had been detained in Allegheny County Jail for 139 days.

[8] Thorton attached a post-sentence motion *nunc pro tunc* to his application.

court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[9] Thornton presents the following issue for our review: "Whether the trial court abused its discretion in denying [] Thornton's application for *nunc pro tunc* relief?" Appellant's Brief, at 5.

"The request for *nunc pro tunc* relief is separate and distinct from the merits of the underlying post-sentence motion." ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128-29 (Pa. Super. 2003) (en banc). Pursuant to Pa.R.Crim.P. 720(A)(1), a post-sentence motion must be filed within ten days of sentencing. In ***Dreves***, our full court explained:

> [In order t]o be entitled to file a post-sentence motion *nunc pro tunc*, a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, i.e., reasons that excuse the late filing. Merely designating a motion as "post-sentence motion *nunc pro tunc*" is not enough. When the defendant has met this burden and has shown sufficient cause, the trial court must then exercise its discretion in deciding whether to permit the defendant to file the post-sentence motion *nunc pro tunc*. If the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc*, the court must do so expressly. In employing the above line of reasoning, we find instructive cases dealing with the restoration of direct appeal rights *nunc pro tunc*.

---

[9] In his Rule 1925(b) statement, Thornton raises an illegality of sentence issue (court's flat sentence of 537 days' incarceration violates 42 Pa.C.S.A. § 9756) and a claim that the court abused its discretion by denying his request to file post-sentence motions *nunc pro tunc* because it "absolutely precluded [] Thornton [from] raising a discretionary aspect[s] of sentencing claim on appeal through no fault of his own." Pa.R.A.P. 1925(b) Statement, 7/7/25, at 2-3 (unpaginated). Notably, in his brief on appeal, Thornton claims that the issues he intended to raise in his post-trial motion "specifically challenge[] the court's **exercise of discretion** in revoking [his] parole." Appellant's Brief, at 22 (emphasis in original). Thornton's attempt to repackage the claims he raised in his post-sentence motion and Rule 1925(b) statement does not convince this Court that they are anything other than discretionary aspects of sentencing issues. ***See infra*** at 9, 9 n.10.

> In **Commonwealth v. Stock**, []679 A.2d 760, 764 ([Pa.] 1996), for instance, our Supreme Court opined that in order for an appeal *nunc pro tunc* to be granted, the appellant would have to show an extraordinary circumstance wherein a direct appeal by right was lost. **Accord**, **Commonwealth v. Peterkin**, [] 722 A.2d 638, 643 n. 7 ([Pa.] 1998). Similarly, in order for a petition to file a post-sentence motion *nunc pro tunc* to be granted, a defendant must, within 30 days after the imposition of sentence, demonstrate an extraordinary circumstance which excuses the tardiness.

**Dreves**, 839 A.2d at 1128 (footnote omitted). "[T]he decision to allow the filing of a post-trial motion *nunc pro tunc* is vested in the discretion of the trial court and [] we will not reverse [that decision] unless the trial court abused its discretion." **Id.**

Instantly, the trial court opined that "the only viable appellate claim available after a revocation of parole [is] the underlying decision to revoke." Trial Court Opinion, 9/2/25, at 6. Thus, the trial court concluded that Thornton could not appeal his revocation sentence on the basis of a claim challenging the discretionary aspects of his sentence. We agree.

It is well-established that an order revoking parole does not impose a new sentence but, rather "requires [the defendant] to serve the balance of a valid sentence previously imposed." **Commonwealth v. Mitchell**, 632 A.2d 934, 936 (Pa. Super. 1993). In fact, the court "is not free to give a new sentence" once it finds that a defendant has violated his or her parole but must "recommit [the defendant] to jail." **Id.**

> [T]he purposes of a court's parole-revocation hearing—[i.e.,] the revocation court's tasks—are to determine whether the parolee violated parole and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment, are in

- 7 -

order. The Commonwealth must prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion. In the exercise of that discretion, a conviction for a new crime is a legally sufficient basis to revoke parole.

Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement. Accordingly, **an appeal of a parole revocation is not an appeal of the discretionary aspects of sentence.**

*Commonwealth v. Kalichak*, 943 A.2d 285, 290-91 (Pa. Super. 2008) (emphasis added) (citations omitted).

Here, Thornton's application seeking *nunc pro tunc* relief states that on the date the trial court handed down his revocation sentence, "Thornton advised Attorney [Richard E.] Romanko that he wished to file an appeal of his probation sentence **regarding the discretionary aspects of his sentence and his flat sentence** [and that] Attorney Romanko failed to file a post-sentence motion for [] Thornton within ten (10) days." Application to File Post-Sentence Motion *Nunc Pro Tunc*, 5/30/25, at 3 (emphasis added). Thornton contends that because a discretionary aspects of sentencing claim must first be raised in the trial court, via the filing of a timely post-sentence motion or by raising the issues during sentencing proceedings, "he will be denied his absolute constitutional right to a direct appeal through no fault of his own." *Id.* at 3-5.

Thornton provides no explanation as to why counsel failed to file his requested post-trial motion in a timely manner. Moreover, as the trial court and Commonwealth point out, any discretionary aspects of sentencing claims

regarding his parole revocation sentence are not cognizable on appeal.[10] **See Kalichak**, **supra** at 291. **See also Commonwealth v. Galletta**, 864 A.2d 532, 539 (Pa. Super. 2004) (claim parole revocation sentence was harsh and excessive not cognizable claim on appeal); **Commonwealth v. Shimonvich**, 858 A.2d 132, 135 (Pa. Super. 2004) (claim court failed to consider mitigating factors or failed to place reasons on record for sentence imposed cannot be addressed in context of review of parole revocation); **Mitchell**, 632 A.2d at 936 (court has no authority to order new sentence with minimum and maximum when revoking parole). Thus, we conclude that the trial court did not abuse its discretion in denying Thornton's request to file a *nunc pro tunc* post-sentence motion where he failed to demonstrate sufficient cause to excuse the late filing or show an extraordinary circumstance excusing the tardiness. **See Dreves**, **supra**.

Judgment of sentence affirmed.[11]

---

[10] In his proposed counseled *nunc pro tunc* post-trial motion, Thorton contends that the trial court: (1) failed to consider mandatory sentencing factors under 42 Pa.C.S.A. § 9721(b); (2) failed to consider Thornton's personal history, character, and treatment and rehabilitative needs under 42 Pa.C.S.A. § 9725; (3) failed to place adequate reasons on the record to justify its sentence; (4) impermissibly focused on the seriousness, frequency, and timing of his probation violations; and (5) violated the "min-max" rule. **See** Post-Sentence Motion *Nunc Pro Tunc*, 5/30/25, at 2.

[11] We recognize that because this appeal involves a revocation of parole, and not probation, this full Court's recent decision, **Commonwealth v. Seals**, Nos. 1350 MDA 2024, 1351 MDA 2024, 1352 MDA 2024, 2026 Pa. Super. LEXIS 82 (Pa. Super. filed Feb. 19, 2026) (en banc), is not implicated. **See id.** at *49 (challenge to trial court's authority to impose sentence pursuant to 42 Pa.C.S.A. § 9771(c), for technical probation violations, constitutes legality of sentencing claim).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  4/23/2026